IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**EASTERN DISTRICT.**
### NEW-ORLEANS, MARCH, 1830.

---

HANSE & HEPP *vs.* NEW-ORLEANS MARINE AND FIRE INSURANCE COMPANY.*

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

EASTERN DIST.
*March*, 1830.

HANSE & HEPP
*vs.*
N. O. MARINE
AND FIRE INS. CO.

The expenses of the crew of a vessel, for their wages and provisions, during her detention at an intermediate port, to refit or repair injuries sustained on the voyage, from the time of her putting away for the port, and every other expense necessarily incurred during the detention, for the benefit of all concerned, *are subjects* of general average.

In an action, against the insurers in which the assured claim the whole amount insured, or such proportion of the average loss as they have sustained, they may prove and recover a general average.

The insured may sue the underwriters directly, without the amount being settled by the parties subject to the contribution as on a general average, especially when there is nothing else to contribute in settling the average but *property* for which the insurers are already liable.

* This case was omitted to be reported in its proper place and time, through inadvertence. It is now given as an important case.

1

EASTERN DIST. Where the error is in the amount of the sum found by the verdict, and
March, 1830.     depends on calculation, the Supreme Court will correct it without
HANSE & HEPP    setting the verdict aside.
vs.
N. O. MARINE        This is an action on a policy of insurance, to recover the
AND FIRE INS. CO. amount insured on a steam-boat.

The plaintiffs allege that they insured the sum of five thousand dollars, at the office of the defendants, on their steam-boat, called the Fair Star, her engine, tackle, apparel, &c., for the term of six months, commencing the 5th March, 1828; the boat, engine, tackle, &c., being valued at twenty thousand dollars. That on or about the 31st of August or 1st of September, 1828, near Biloxi, the boilers of the boat cracked and bursted, by which her value was destroyed, and damage done to her engine, tackle and materials to the sum of ten thousand dollars, and more than fifty per cent. on the sum insured; that said damage and injury was caused by the winds, waves and fire, and other perils insured against; the sea, before and at the time of said loss and damage running high, which caused the boat to fetch and roll excessively. They further allege, that as soon as the loss and damage was known, the boat was abandoned to the insurers. That said boat, engine, tackle, &c., sustained an average loss of ten thousand dollars, in consequence of the perils insured against: wherefore they pray, that the defendants be adjudged to pay to them the said sum of five thousand dollars, or their proportion of such average loss and damage as has been sustained, and which they allege amounts to five thousand dollars; and for such other relief as the case requires.

The defendants admitted the execution of the policy sued on, and pleaded a general denial; they denied especially that any event had happened which could make them liable.

The policy is dated the 5th of March, 1828, and declares that "Hanse & Hepp, as well in their own name as for and in the name of every other person to whom the same may appertain, doth make *assurance*, and cause themselves and every of them to be assured, lost or not lost, at and from ——,

EASTERN' DIST.
*March,* 1830.

HANSE & HEPP
*vs,*
N. O. MARINE
AND FIRE INS. CO.

upon the body, engine, tackle, apparel, &c., of the good steam-boat *Fair Star*," &c.   "The said boat, engine, tackle, &c., for so much as concerns the assured by agreement between the assured and assurers in this policy, are and shall be valued at twenty thousand dollars, without any farther account to be given by the assured to the assurers.  Touching the perils which the assurers are content to bear in the voyage, they are'of the river and fire, and all that shall have or come to the hurt, detriment or damage of the said steam-boat, engine or any part thereof.  And in case of loss or misfortune, it shall be lawful for the assured, &c., to sue, labor and travel for, in and about the defence, safeguard and recovery of said 'steam-boat, &c., without prejudice to this insurance; to the charges whereof, ·we, the insurers, will· contribute according to the rate and quantity of the sum herein insured.  We, the insurers, are contented to bind the capital stock of the New-Orleans Marine and Fire Insurance Company to the assured, &c., at the rate of six per cent. for· six months; and in case of loss, the assured are to abate two per cent., &c.

"*Memorandum.* It is agreed, that the assured are not to abandon on account of the steam-boat grounding or being otherwise detained.   Also, that the said steam-boat is warranted by the assured free from average under fifteen per cent., unless general.  And when a simple average loss shall be on account of repairs, &c., the assurers shall be answerable for only two thirds of the expenses of reparation, or replacing the property lost; the other third being considered as the general difference of value between new and old materials.

"Warranted stiff, stanch, sound, in good condition, seaworthy and well found in all things necessary for the above named voyage, *at the time of her departing from the port or place first above named.*

"Five thousand dollars on the hull and materials of the· above boat; to run as a regular packet from this place (New-Orleans) to Mobile, Pensacola and all intermediate places on the lakes, for six months from this date (March 5th, 1828;) valued as above.

EASTERN DIST.
*March,* 1830.

HANSE & HEPP
*vs.*
N. O. MARINE
AND FIRE INS. CO.

"Five thousand dollars is already insured by this company, five thousand dollars by the Mississippi office, five thousand dollars by the Louisiana State Insurance office."

The evidence showed that the boat left Mobile the 31st August, 1828, at mid-day, for New-Orleans, being the last trip she could make within the policy, with strong gales and occasional squalls. She labored heavily from the swell and rolling of the sea, and about seven o'clock, P. M., the packing of the cylinder flew out, which caused her to come to. The hands were employed in repacking the cylinder, and the winds and sea increasing. On the 1st of September, about seven o'clock, A. M., being near the bay of Biloxi, the packing again blew from the cylinder; but the boat succeeded in getting up to the bar, came to anchor, landed some way-passengers at Biloxi, and packed the cylinder anew. She raised steam and got in readiness to proceed, when a sudden explosion of steam took place, which filled the hold with heat and vapor. On examination, it was discovered the outer starboard boiler was rent near two feet, which rendered it impracticable to proceed. The mail and passengers were sent in a boat to New-Orleans, and to inform the owners of the accident and procure an engineer and materials requisite for repairs. On further examination, it was found the larboard outer boiler was cracked, and leaked so as to prevent being filled. The engineers finally concurred in opinion that it would be impossible to refit the boilers for use, without taking them out, if even then. On the 29th September, the boat and her machinery was towed, with the assistance of the schooner Emblem, into the bayou St. John, to the bayou bridge.

A survey of the boat and machinery was had at the instance of the plaintiffs, by the port wardens of New-Orleans, assisted by a master shipwright and two engineers, who state in their report: "Having examined minutely the boilers, two of which were moved forward to the fore hatches for light, and the others remaining in their beds, room sufficient being left by the removal of the others to allow them to be perfectly examined, found them *all five*

EASTERN DIST.
*March*, 1830.

HANSE & HEFF
*vs.*
N. O. MARINE
AND FIRE INS. CO.

*completely worn and burned out; the substance of the iron entirely destroyed by salt, mud and corrosion*," &c.

The testimony was contradictory, as to the charge of negligence of the captain and engineers. The experts who examined the boilers afterwards, say, they must have been red hot, and nearly without water, when they exploded. An engineer who examined them, says the iron was rotten ; that he could sink his hammer through it. It was in proof, that new boilers were procured before the boat was fit for service again.

The engineers estimated the loss to the owners in repairing the boat, at seven thousand dollars. The old materials on hand and retained by the owners, were valued at two hundred dollars. The bill of expenses, including the wages and provisions of the boat, officers and crew, also including an item of four hundred and twenty-seven dollars, paid to a Mr. Wood for attending the boat nine or ten months after she was brought into the bayou St. John, amounted to one thousand six hundred and eleven dollars and twenty-three cents.

The cause was submitted to a jury. At the close of the trial, the counsel for the defendants moved the court to charge the jury, that the wages and provisions paid and consumed during a delay to repair, or after the accident, in case she does not repair, were not chargeable to the insurers, under a partial loss on the "hull and materials" of the vessel. The court refused the charge, and a bill of exceptions was taken to the refusal.

A further charge, that "the insurers were not liable for losses or accidents occasioned by the negligence and mismanagement of the insured or their agents," was required ; but the judge refusing, his refusal was excepted to.

The jury returned a verdict of one thousand and eighty-three dollars for the loss, and five hundred and sixty-two dollars and forty cents for expenses; in all one thousand six hundred and forty-five dollars and forty-five cents; which, upon motion, was set aside, and a new trial ordered.

Eastern Dist.
March, 1830.

HANSE & HEPP
vs.
N. O. MARINE
AND FIRE INS. CO.

At the second trial, the same evidence was before the jury. Two bills of exception were taken by the defendants' counsel, similar to those on the first trial, and are stated in full in the opinion of the court. The jury returned a verdict of one thousand five hundred and fifty dollars for the plaintiffs, with interest from judicial demand, which was confirmed by the judgment of the court.

The following, entitled "plaintiffs' estimate," is in the papers of the suit :

Engineers' estimate of repairs is.............$7,000
One third deducted, new for old,............... 2,333

———
4,667
Expenses for wages and provisions, excluding $427, 1,184

———
5,851

The defendants only being liable for one fourth,...$1,463

The defendants being dissatisfied with the verdict and judgment, appealed.

*Lockett*, for the plaintiffs, contended :

1. That this was a case of general average, in which the defendants were directly bound to the insured for the amount of the loss. Suppose a ship in ballast at sea, owned by one person, encounters a storm which requires her to cut away her masts voluntarily, to save the vessel, and puts into an intermediate port to repair. She is detained to make these repairs, and keeps the crew on wages and provisions ; what kind of loss would it be ? It is the very definition of a general average.

2. But it is objected, that there is no cargo, no freight and but one owner ; consequently, there can be no contribution and no general average, and the underwriters are therefore not bound to pay. In answer to this, suppose the ship were insured by four companies, each five thousand dollars, and the loss, including wages and provisions, is four thousand dollars, would the insurers contribute each one thousand

dollars, to pay this loss of four thousand dollars? Can there <span>EASTERN DIST.</span> be any doubt about this? Here would be a voluntary sacrifice and a contribution, the very essence and definition of a general average.

EASTERN DIST.
*March,* 1830.

HANSE & HEPP
*vs.*
N. O. MARINE
AND FIRE INS. CO.

3. But the loss may be called by what name the defendants' counsel pleases; it is still a loss. If the ship had perished, there would have been a total loss, and the insurers would have been bound to pay the full value, to wit: twenty thousand dollars; each insurance five thousand dollars.

4. In the case before the court, the boat was insured by three insurers when the accident happened, which required her to stop at an intermediate port, and repair. The injury sustained was by one of the perils insured against, by which the insurers were bound to make good the damage. If she had been totally lost, they would have been bound for the entire insurance on her.

5. But suppose it only to be a partial loss, we are completely sustained by the authorities. A particular average is called partial loss, and the insurers are liable to pay the damage happening to the thing insured, or the expenses incurred exclusively on its account and occasioned by the perils insured against. *Phillips on Insurance*, 369.

6. The cases cited by the defendants sustain the plaintiffs. A case from 11 Johnson, is relied on: in that case, insurance was effected on the ship Orbit, from New-York to Liverpool and back to the United States. The vessel, on her outward voyage, sustained considerable injury, so that on her arrival at Liverpool she was put into dock, and remained four or five months. On suit being instituted for the wages and provisions of the crew during this time, it was held that these expenses were incurred before the vessel arrived at her port of discharge, and were necessary for the prosecution of the voyage. 11 *Johnson*, 320.  1 *Caines*, 537.  2 *Ibid.*, 263.

7. In the present case, the crew remained on board to take care of the boat, and their wages and provisions form as fair a claim to reimbursement as any other expense incurred. See also *Boulay-Paty, vol.* 4, 12.

EASTERN DIST.
March, 1830.

HANSE & HEPP
vs.
N. O. MARINE
AND FIRE INS. CO.

*Strawbridge*, for the defendants, contended:

1. That the judge *a quo* erred in refusing to instruct the jury that the insurers were not liable for losses occasioned by the negligence or mismanagement of the insured or their agents, unless so expressed in the policy. In consequence of this refusal, the jury retired, not to consider whether the accident and loss happened by the negligence or misconduct of the plaintiffs' agents, but merely to settle the amount for which the defendants are to be made liable: a mere inquest of damages.

2. The testimony clearly shows, that there was negligence and mismanagement. · The boilers were suffered to become empty and red hot, which was evidently the principal cause of the disaster; none can say the jury could not have found proof of negligence.

3. The plaintiffs rest their case and right to recover wages and provisions in this action, on the clause in the policy which says the insured may sue, labor and travel for, &c. in case of loss, &c. If by this they mean we are to contribute to expenses for the general benefit, it is admitted; but if we are to be liable for expenses properly chargeable to another subject as to the vessel or freight, or for expenses not customarily chargeable to the ship, we deny their right to recover.

4. It has been a matter of debate among judges, whether wages and provisions were allowable even in a case of general average. It was argued from the bench that they were not, but that they were a charge on the freight, and that the underwriter on freight was to bear the loss. 2 *Caines*, 266, 279. 4 *Dallas*, 247.

5. It has also been decided, that these charges were not a partial loss on the freight. 2 *Binney*, 547. And it is remarkable that all these cases, as well as those quoted in the argument at bar, concur in the opinion that they are not chargeable to the ship.

6. Usage affects the construction of the policy. *Phillips on Insurance*, 14. No clause is found which can make an

EASTERN DIST.
March, 1830.

HANSE & HEPP
vs.
N. O. MARINE
AND FIRE-INS. CO.

underwriter on a ship liable for losses on the cargo, or *vice versa;* and yet this happens every day, by contribution to general average.  The whole system of contribution, what losses or expenses are to be contributed for, what property and in what proportion the contributions are to be made, rests on usage; and in every case cited, is an authority to show that wages and provisions are not, by commercial usage, a charge against the ship in partial loss, either as expenses or otherwise.

The counsel for the plaintiffs seems to think the clause authorizing in case of loss, the insured to *sue, travel and labor for,* &c., is peculiar to this policy, and that it has never been the subject of examination, and that it is an express authorization for him to recover.  See the following cases on this subject.  7 *Johnson,* 422 *and* 432, *and the cases therein cited.* 1 *Connecticut Reports,* 243.   7 *Cranch,* 419.

*Porter, J.,* delivered the opinion of the court.

This action is brought on a policy of insurance, executed by the defendants on the steam-boat Fair Star, her engine, tackle, &c., for the sum of five thousand dollars, the one fourth of her value.  The petition charges the loss of ten thousand dollars by the bursting of the boilers, caused by the winds, waves and other perils insured against; and alleges that an abandonment was made to the company, who by reason thereof, have become liable to pay the sum of five thousand dollars, with interest and costs.

The petition further alleges that the boat, engine, tackle and materials, have sustained an average loss and damage to the amount of ten thousand dollars, in consequence of the perils insured against, and it concludes by a prayer for the condemnation of the defendants in the sum of five thousand dollars, with interest and costs, or their proportion of such average loss and damages as the petitioners have sustained.

The general issue was pleaded, and the cause submitted to a jury, who found a verdict in favor of the plaintiffs for the sum of one thousand six hundred and forty-five dollars and forty cents, with interest from judicial demand.   This verdict

EASTERN DIST.
March, 1830.

HANSE & HEPP
vs.
N. O. MARINE
AND FIRE INS. CO.

was set aside on application of the defendants, and a new trial granted. The jury who passed on it the second time, gave a verdict in favor of the petitioners for the sum of one thousand five hundred and fifty dollars, with interest. On this finding, the court below rendered judgment for the sum just stated, with interest from judicial demand. The defendants made an unsuccessful attempt to obtain a new trial, and appealed.

There are two bills of exception, which present the questions of law on which the case has been litigated. One is, to a refusal of the court below to charge the jury that the insurers were not liable for losses occasioned by the negligence or mismanagement of the insured or their agents, unless so expressed in the policy.

A great deal of research has been exhibited by the counsel on both sides, in the discussion of this question, but we do not find it necessary to express an opinion on it. The evidence is spread on the record, and we are unable to discover any thing in it which authorizes an allegation of this kind, or which could have required the application of the doctrine on which the appellants rely. It would be improper, therefore, to remand the cause to obtain the opinion of the judge *a quo* on an abstract question, not necessary to the decision of the case.

The other bill of exception is in the following words : " At the trial of this cause, the counsel for the defendants moved the court to charge the jury that the wages and provisions paid and consumed during a delay to repair, or after the accident in case she does not repair, were not chargeable to the insurers, under a partial loss on the hull and materials of a vessel ; and the court refusing so to charge them, the defendants tendered their bill of exception," &c.

We will first examine the question, whether the insurers are responsible for the wages and provisions of the crew during the time the vessel remains in an intermediate port for repair, and then see whether there was error in the judge's not giving the particular charge called for ; and if there was, what should be the effect of it.

According to the principles adopted in the English courts, the expenses of the crew for their wages and provisions during the detention of the vessel to refit, are not subjects of general average; and the non-liability of the insurers to reimburse them, seems well established in that country, notwithstanding some doubts expressed by writers on this branch of maritime law.

EASTERN DIST.
March, 1830.

HANSE & HEPP
vs.
N. O. MARINE
AND FIRE INS. CO.

In one case, which came before the court of king's bench, the reasoning of the chief justice would seem to show the propriety of admitting them as a charge against the insurers, for he is reported to have said, "if the return to port was necessary to the general safety of the whole concern, it seems that the expenses unavoidably incurred by such necessity, may be considered as the subject of general average." Subsequent decisions, however, have not carried out the doctrine to the extent contended for in this case by the appellees. *Parke on Insurance,* 174. 2 *Condy's Marshall,* 720. *Hughes on Insurance,* 290, 292. *Beames,* 166. *Benecke on Indemnity,* 462. *Abbott on Shipping,* (ed. 1829,) 349. 3 *Maule & Selwyn,* 482. 4 *Ibid.,* 141. 2 *Barn. & Cres.,* 805.

In France, such charges were reputed general average if the vessel was hired by the month; but if hired by the voyage, the expense was borne alone by the ship, as a particular average. *Valin* vehemently contested the justice of such a distinction, and the commission charged with the preparation of the late code of commerce of that country, abolished it by the work which they drew up for legislative adoption. On the representations, however, made by the tribunal of commerce of Havre, it was established, and is now the law of that portion of the continent of Europe. *Emeregon, vol.* 1, *539 and* 625. *Pothier, Traité du Chartre Partie, No.* 85. *Boulay-Paty, vol.* 4, 452 *and* 454.

The Law Merchant of the United States is contrary to that of England, on this point, and does not recognize the distinction of the French jurisprudence. With us, it appears well settled that the wages and provisions of the crew, from the time of putting away for the port, and every other expense necessarily incurred during the detention for the

*The expenses of the crew of a vessel, for their wages and provisions, during her detention at an intermediate port, to refit or repair injuries sustained on the voyage, from the time of her putting away for the port, and every other expense necessarily incurred during the detention, for the benefit of all concerned, are subjects of general average.*

EASTERN DIST. *March*, 1830.

HANSE & HEPP
*vs.*
N. O. MARINE
AND FIRE INS. CO.

benefit of all concerned, are subjects of general average. The reasoning of justice Sewell, in delivering the opinion of the Supreme Court of Massachusetts, appears to us to express with clearness and correctness the grounds on which such a rule has been established. "A liberal construction," says he, "in this respect, appears conducive to the interest of the insurers in the benefit they derive from every reasonable precaution against impending and extraordinary risks, such as the continuing at sea with a vessel disabled in her sails and rigging. By rendering all concerned liable in a general contribution to defray the extraordinary expenses of seeking a port, and of the detention there to refit, the hazard of opposing interests is avoided, and a security common to all concerned is purchased, as it ought to be, at their common risk and expense." *Phillips on Insurance*, 348. *4 Massachusetts Reports*, 548. *7 Ibid.*, 365. *3 Kent's Commentaries*, 250. *4 Dallas*, 246. *2 Binney*, 547. *2 Washington's Circuit Court Reports*, 226. *2 Connecticut Reports*, 239.

In an action against the insurers, in which the assured claim the whole amount insured, or such proportion of the average loss as they have sustained, they may prove and recover a general average.

The insured may sue the underwriters directly, without the amount being settled by the parties subject to the contribution as on a general average, especially when there is nothing else to contribute in settling the average but property for which the insurers are already liable.

Having thus ascertained the liability of the defendants for the wages and provisions of the crew, during the period the steam-boat was detained at Biloxi, our next inquiry is whether the plaintiffs can recover them in the present action. The petitioners demand judgment against them for five thousand dollars, the whole amount insured, or their proportion of such average loss and damage as the plaintiffs might have sustained; which average loss, however, they aver amounts to five thousand dollars. Under these allegations, we think the plaintiffs could properly prove a general average. We are not aware what other objection could be made to the action, except that of the amount not being settled by the parties subject to the contribution, before recourse was had on the insurers.

But, although the decisions are somewhat contradictory on this point, we apprehend that the insured may do so, in a case like that before the court, where it is not shown there was any thing else to contribute in settling the average, but property for which the defendants are responsible. *7 Johnson*, 412. *Phillips on Insurance*, 353. *4 Binney*, 502. *1 Caines*, 196.

Under this view of the case, we cannot see what object, useful to the defendants, could have been obtained by claiming the instructions from the judge *a quo*, that the defendants were not responsible on a partial loss. Admitting they are not, if they were so on a general average, it is immaterial how the judge charged the jury on this point in relation to what his opinion was requested.

EASTERN DIST.
*March*, 1830.

HANSE & HEPP
*vs.*
N. O. MARINE
AND FIRE INS. CO.

There remains for our consideration the amount found by the jury. On questions of fact, we rarely interfere with the decision of the country. If we do so on this occasion, it is because taking every loss proved at the highest rate established by the evidence, the verdict is for too large a sum. The error, therefore, being one of calculation, it behooves us to correct it. Taking the estimate of the engineers at seven thousand dollars, and deducting from it one third of the difference between new materials and old, we have four thousand six hundred and sixty-six dollars. To this must be added the amount of expenses (deducting the charge for attendance on the boat after her arrival in New-Orleans four hundred and twenty-seven dollars and fifty cents, leaves one thousand one hundred and eighty-three dollars and seventy-three cents,) which added to four thousand six hundred and sixty-six dollars, gives five thousand eight hundred and forty-nine dollars and seventy-three cents. From this must be deducted one fourth of the value of the old materials, fifty dollars, and we have five thousand six hundred and forty-nine dollars and seventy-three cents, of which the defendants are responsible for one fourth, that is, one thousand four hundred and forty-nine dollars and ninety-six cents; from which two per cent. is to be deducted according to a clause in the policy, and the balance will be one thousand four hundred and twenty dollars and ninety-eight cents, for which the plaintiffs are entitled to judgment.

Where the error is in the amount of the sum found by the verdict, and depends on calculation, the Supreme Court will correct it without setting the verdict aside

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and the verdict set aside; and it is further ordered, adjudged and decreed, that the plaintiffs do recover from the

defendants the sum of one thousand four hundred and twenty dollars and ninety-eight cents, with costs in the court of the first instance ; those of the appeal to be borne by the appellees.