## MARY WYMAN *vs.* THE LEXINGTON & WEST CAMBRIDGE RAIL ROAD COMPANY.

The provision in Rev. Sts. *c.* 24, § 19, that jurors for the assessment of damages caused by the laying out of a highway shall be taken from "the three nearest towns not interested," means the three towns nearest to the town in which the land lies, over which the highway is laid out: And by Rev. Sts. *c.* 39, § 57, this provision is extended to jurors for the assessment of damages caused by the laying out of a rail road.

Under Rev. Sts. *c.* 24, § 15, and *c.* 39, § 57, which direct that when two or more persons apply, at the same time, to the county commissioners, for a jury to assess damages caused by the laying out of a highway or rail road, " the said commissioners shall cause all such applications to be considered and determined by the same jury," the most proper course for the commissioners is, to issue a single warrant to an officer, reciting all the cases that are to be heard by the jury: If separate warrants for each case be issued by the commissioners, yet if the officer summon a single jury, who hear and determine each case, their verdicts will not be set aside merely because several warrants were irregularly issued.

When several applications are made, at the same time, by owners of lands in different towns, for a jury to assess damages caused by the laying out of a highway or rail road, the jurors are to be taken from three towns nearest to the town in which the land of either of the applicants is situate: And when a single application, for such purpose, is made by one who owns lands in different towns, the jurors are to be taken from three towns nearest to either of the towns in which his lands are situate: This is all that is practicable under Rev. Sts. *c.* 24, § 15, and *c.* 39, § 57.

It is not necessary that notice to jurors, who are drawn to assess damages caused by the laying out of a highway or rail road, should be served by a constable: Such notice may be served by the officer to whom the warrant for summoning a jury is directed.

On the hearing, before a jury summoned to assess damages caused to A. by the laying out of a rail road over his land, he may give evidence of the price paid by the rail road company for the adjoining land of B. purchased by them : But an owner of adjoining land cannot legally be permitted to state to the jury what, in his judgment, is the value of that land, though he be a farmer who has occasionally bought and sold land; and if he be permitted to make such statement, the verdict of the jury will be set aside, although they were instructed, that opinions, except of experts, were not evidence, and that the facts and reasons on which any opinion or judgment was formed, were the evidence on which they must form their opinion.

This was a proceeding upon a petition for a jury to assess damages sustained by the petitioner by the laying out of the respondents' rail road over her land in the town of West Cambridge. The petition was presented to the county commissioners in September 1846, and they issued a warrant, directed " to any deputy sheriff of our county of Middlesex, Samuel Chandler, Esq. sheriff of said county, being interested," to summon a jury, agreeably to law, to estimate the petitioner's damages. A deputy sheriff thereupon proceeded to execute the warrant, by causing jurors to be drawn by the proper authorities of Cambridge, Watertown and Somerville, three towns nearest to West Cambridge, and by summoning said jurors to appear, &c.

When the jury convened, and before they were empannelled, the respondents objected, " that no jurors were taken from the town of West Cambridge, being the town in which the land of the petitioner is situate, and not being interested in the question : Also that the jurors were summoned by the officer to whom the warrant was directed, and not by a constable : Also that the jurors, in the cases of this petitioner and of George Pierce, were summoned under two warrants, both applications for a jury having been presented to the county commissioners, and passed upon, at the same time, for the assessment of damages occasioned by the laying out of the same rail road : Also that the officer, with the two warrants, made but one requisition upon each of the towns for jurors." These objections were overruled, by the officer appointed to preside at the trial, and the jury was empannelled.

During the trial, a witness for the petitioner was asked what was given, by the respondents, for land next adjoining the land of the petitioner. Another witness for the petitioner, a farmer who had occasionally bought and sold land, was asked what, in his judgment, was then the value of his own land next adjoining the land of the petitioner. Both of these questions were answered.

The jury were distinctly instructed by the presiding officer

27 *

and the rule was repeatedly stated, in their hearing, that opinions, except of experts, were not evidence ; but that the facts and reasons, on which any opinion or judgment was founded, were the evidence on which the opinion of the jury must be formed.

Exceptions were duly taken to the proceedings aforesaid, and were allowed by the presiding officer.

The verdict of the jury was returned into the court of common pleas, and was there ordered to be set aside.   The petitioner appealed to this court.

*Mellen & G. Farrar*, for the respondents.   1. A part of the jurors should have been taken from West Cambridge.   By the Rev. Sts. *c*. 24, § 19, the officer who receives a warrant for a jury to assess damages, caused by laying out a highway, is directed to "require of the selectmen of the three nearest towns, not interested in the question," to return jurors.   And by Rev. Sts. *c*. 39, § 57, when application is made for a jury to assess damages caused by laying out a rail road, "the like proceedings shall be had thereon, as are provided in the twenty fourth chapter, for the recovery of damages for laying out highways."   What is meant by "the three nearest towns not interested"?

In *St*. 1801, *c*. 16, § 2, which provides for the speedy re moval of nuisances, the jurors who were to come before two justices of the peace, *quorum unus*, were directed to be drawn from the jury box of "the three towns next adjoining to the town in which such nuisance may be."   So in *St*. 1814, *c*. 173, jurors for assessing damages caused by flowing land by mill dams were directed to be taken from "the three towns nearest to that in which the land injured is situated."

The change of language, in Rev. Sts. *c*. 24, § 19, above cited, is a change of the law.   It was intended, by introducing language never before used on this subject, that jurors should be taken from the nearest point, if the town in which they live is not interested ; both because they are better judges of the value of the land, and because less cost is thereby incurred. The words "towns not interested" mean not interested

as a body corporate, in the question to be tried, and not the interest of an individual member of the town, who may bring a question before the jury. And the interest of the town must be a legal interest. In the case at bar, the town of West Cambridge had no corporate or legal interest in the amount of the petitioner's damages.

2. The two applications of the present petitioner and of Pierce should have been treated, throughout, either as joint or several. The Rev. Sts. *c.* 24, § 15, require that both should "be considered and determined by the same jury." But the officer treated the two cases, partly as joint, and partly as several. One requisition for jurors was made in two cases of owners of different lands, in which the two had no joint interest. As the cases now stand, there are two warrants and only one requisition; so that the record, in one or the other of them, must be incomplete. There should have been but one warrant, embracing both cases.

3. Notice to the jurors should have been served by a constable; the officer, to whom the warrant was directed, having no legal authority to summon them. Rev. Sts. *c.* 24, § 19; *c.* 95, §§ 15 – 17.

4. The price given by the respondents for land adjoining the petitioner's was not legal evidence for her. In the case of rail roads, there is not a free sale. The corporation offer more than the land is worth, in order to avoid adversary proceedings and the risk of the cost of a jury.

5. The farmer's judgment of the value of his own land, adjoining that of the petitioner, was not admissible in evidence; and the effect of his testimony was not prevented by the remarks of the presiding officer concerning that species of evidence. 1 Greenl. on Ev. § 440. *Needham* v. *Ide*, 5 Pick. 510. *Norman* v. *Wells*, 17 Wend. 136. *Gibson* v. *Williams*, 4 Wend. 320. *Dickinson* v. *Barber*, 9 Mass. 225. *Jameson* v. *Drinkald*, 12 Moore, 148.

*Buttrick*, for the petitioner. 1. The jurors were taken from the right towns. The town nearest to the land in the town is not the town in which the land lies; so that if the

intention of Rev. Sts. *c.* 24, § 19, was, that jurors should be taken from the nearest point, as the respondents contend, the language is not conformed to that intention.   The manifest purpose of the revised statutes was, to put the cases of flowing lands, and laying out highways, turnpikes and rail roads, on the same ground.   And this purpose cannot be effected in all cases, except by excluding the town in which the land is situate.   For, in some questions of *ways,* the town where the land lies is interested, and in others it is not.   If the respondents' objection prevails, it follows that jurors from other towns must come from the towns whose boundaries are nearest to the land over which the rail road passes.   The word " adjoining " is not used in the statute ; because there may not be three adjoining towns not interested.   Therefore the word " nearest " is used.

If West Cambridge could not be resorted to for jurors, in a highway case, then not in a rail road case ; for Rev. Sts. *c.* 39, § 57, provide for "the like proceedings " in rail road cases, as in cases of highways.   The revised statutes, throughout, recognize towns as parties to highway cases.   In *Lanesborough* v. *County Commissioners of Berkshire,* 22 Pick. 278, the court held that a town, in which a highway had been laid out by the commissioners, was a party that might be aggrieved and appeal.   Before the revised statutes, towns paid all damages in highway cases, and were therefore interested. Yet in flowing cases, and rail road cases, generally, towns are not interested.   The object of the statute, in putting all these cases on the same ground, was, to exclude local interests and prejudices, and yet to take the jurors from the vicinage.

2. It is objected that a single requisition of jurors. for two separate cases, was made on two warrants.   In the first place, the court cannot know, except from the venires issued by the officer, that two cases were pending.   Is that judicial knowledge ?   But secondly, how is the provision of Rev. Sts. *c.* 24, § 15, that all applications, made to the county commissioners at the same time, shall " be considered and determined by the same jury," to be carried into effect ?   Can two cases be

consolidated by the officer, *nolens volens?* We deny that this provision applies to rail roads. They go through many towns; so that the same jury cannot always decide two cases that may be brought at the same time. Two cases may be brought at the same time, from different towns, so that the jurors could not be brought from towns nearest to both.

3. The jurors were rightly summoned by the deputy sheriff to whom the warrants were directed. It is immaterial, however, whether they were rightly summoned, or summoned at all, as they were regularly drawn, attended, were empannelled, and performed their duty. *Patterson's case,* 6 Mass. 486. *Anon.* 1 Pick. 196. The Rev. Sts. *c.* 24, § 21, authorize the officer, who summons the jury, to return a talisman, when there is not a full jury, by reason of challenges or otherwise. By § 28, the same officer is required to give notice of the time and place of meeting to the presiding officer, &c.; and by § 29, his fees for summoning jurors are prescribed. These sections show that the officer, to whom the warrant is directed, (who never is a constable,) may summon jurors.

4. The evidence of the price paid by the respondents for contiguous land was properly received as proof of a fact. It was open to the respondents to show, and for the jury to consider, whether the price was an extorted or a fair one.

5. If the farmer's opinion of the value of his adjacent land was improperly admitted in evidence, yet the remarks of the presiding officer prevented its doing any harm. *Ellis v. Short,* 21 Pick. 142.

DEWEY, J. It has become necessary, in the decision of this and other cases before us, arising upon proceedings in relation to claims for damages for injuries sustained by the location of rail roads, to decide as to the construction of the statute of the Commonwealth regulating the proceedings upon a petition for a jury to assess such damages. The right to a jury in such cases is given to either party who may be dissatisfied with the estimate made by the county commissioners, by the Rev. Sts. *c.* 39, § 57, wherein it is provided that, upon such petition being presented, " the like proceedings shall be had

thereon as are provided in the twenty fourth chapter, for the recovery of damages for laying out highways." This provision is to be kept in mind throughout this whole inquiry.

The Rev. Sts. *c.* 24, regulate the proceedings in such cases, upon a petition for a jury to assess damages occasioned by the location of a highway. Section 18 requires that the warrant, in such cases, " shall be directed to the sheriff of the county, or his deputy who is disinterested, or to a coroner, requiring him to summon a jury of twelve men to hear and determine the matter of complaint." Section 19 enacts that " the officer who receives the warrant shall in writing require of the selectmen of the three nearest towns not interested in the question to return a number of jurors, not less than two nor more than six."

1. One point, arising upon § 19, is as to the true construction of the provision as to the towns from which the jurors are to be selected. Is the town, in which the land that is the subject of the claim for damages is situate, to be included as one of the three towns from which jurors are to be selected, or is it to be excluded? The language of the statute is not definite or precise upon that point. It is a case where we are called upon to give a construction to general language of the legislature, and, as far as possible, we are to give effect to the legislative will. The earliest statute on this subject, that of 1786, *c.* 67, § 4, was very general, giving the party a right to a hearing before a jury " to be summoned by the sheriff or his deputy ;" making no provision as to the towns from which they should be selected. The next statute in the order of time (*St.* 1802, *c.* 135, § 1) provided that the jury in such cases should be drawn from " two or more disinterested towns in said county." This was followed by the *St.* 1827, *c.* 77, § 12, wherein it was provided that " such jury shall, in all cases, consist of twelve persons, and no more than three persons shall be taken from any one town," &c. To this have succeeded the Rev. Sts. *c.* 24, § 19, already cited.

The practical effect of the earlier statutes was, to exclude the town where the land, which was the subject of inquiry,

was situate; as such town was, under the earlier course of legislation, interested in the result, whether it was a question of the location of a road, or the assessment of damages. Hence such town would necessarily be excluded. But under more recent statutes, the damages awarded to the owners of lands are chargeable solely upon the county, and in the mere matter of such damages the town may have no pecuniary interest. We believe, however, that the practice has always been to exclude the town, in which the land is sit. ate, from the list of towns from which a jury is to be summoned to assess damages to the landholder.

By the provisions of the revised statutes, not only the proceedings on the subject of damages, by reason of the location of rail roads, is made to correspond with those of *c.* 24, in relation to highways, but similar provisions exist with regard to damages occasioned by the location of turnpike roads; Rev. Sts. *c.* 39, § 3; and also in relation to damages occasioned by the erection of mills. Rev. Sts. *c.* 116, § 13. As to the latter subject, the *St.* of 1814, *c.* 173, which was in force at the time of the enactment of the revised statutes, very clearly excluded the town in which the land was situate, in the selection of towns from which a jury was to be summoned. That provision required the jury to be taken from " the three towns nearest to that in which the land injured is situated."

We now find, as already stated, these various cases of claims for damages, all regulated by one provision, that of Rev. Sts. *c.* 24. Considering the practice so long prevailing, the provisions actually existing at the time of enacting the revised statutes, excluding, by direct words, the town in which the land was situated, in the case of water mills, and seeing no sufficient evidence of change of purpose, in this respect, in the revised statutes, and nothing in the language of the present existing laws, which requires a different construction, we are of opinion that " the three nearest towns " from which a jury is to be summoned, are the three towns nearest to that in which the land is situate, and exclusive of such town. A

jury summoned in part from the town in which the land lies, that is the subject of damages, would therefore be irregularly summoned, and if seasonably objected to, their verdict would be set aside for that cause.  [See *post.* 327, *note.*]

2.  The next question arising is as to the mode of proceeding where two or more persons apply at the same time for several damages for injury occasioned by the same highway or rail road.  Shall the warrant for a jury, in such cases, be several or joint?  Upon this point, the statute seems to be entirely explicit.  By Rev. Sts. *c.* 24, § 15, " if two or more persons shall apply at the same time for joint or several damages, they may join in the same petition to the commissioners ; and if several applications shall be pending at the same time before the commissioners, for a jury to determine any matter relating to the laying out, alteration or discontinuance of a highway, or the assessment of damages, the said commissioners shall cause all such applications to be considered and determined by the same jury."  The proper course is, therefore, for the officer to summon but one jury for the various cases.  Such warrant to the sheriff from the county commissioners should, more properly, be a single warrant, reciting all the cases to be heard by the jury.  Separate warrants, however, embracing various cases of claims for damage caused by the location of the same rail road, acted upon by the officer, as a joint warrant, in all the subsequent proceedings, and heard by the same jury, would not be so far objectionable as to require us to set aside a verdict for that cause.

3.  Upon the question of summoning the jury, where the lands of several petitioners for a jury are situate in different towns, or where the lands of a single petitioner are situate in different towns, the court are of opinion that the rule must be that of a selection of jurors from three towns nearest the town in which the land of either of the petitioners is situate or, in case of a single petitioner, from three towns nearest to either of the towns in which his lands are situate, would be a sufficient compliance with the statute.  This is all that is

practicable; and the provision of § 15, above cited, requiring all petitions that are presented at the same time to be sent to the same jury, can only be carried into effect in this way.

4. As to the proper mode of giving notice to the jurors, after they have been drawn by the selectmen of the several towns, it has been contended that the only proper mode of notifying them is by a notice by a constable. This position is supposed to be warranted by the provisions of Rev. Sts. *c.* 24, § 19, requiring that "the jurors shall be drawn, summoned and returned as in other cases." Taking this provision alone, and referring to *c.* 95, §§ 15 – 17, regulating the summoning of jurors for the regular terms of the higher courts, it would seem to provide for a notification to the jurors by a constable. No such provision existed in the earlier statutes on this subject, and the practice under them is understood to have been different. Looking at various other sections of *c.* 24 of the Rev. Sts., they are found strongly to indicate a different mode of proceeding. By § 18, the warrant is to issue to the sheriff, "requiring him to summon a jury." By § 28, "the officer, by whom any such jury shall be summoned, shall give seasonable notice of the time and place of their meeting to the person appointed to preside at the trial, and also to the person appointed as agent for the county," &c. By § 29, "the officer shall receive, for summoning the jurors, four cents a mile for all necessary travel, and one dollar and fifty cents for each day that he shall attend upon them." The officer referred to in these sections is the sheriff or his deputy, and not a constable. See also § 21 In *c.* 95, on the other hand, the venires or requisition for jurors are to be served upon the selectmen by a constable, and all the proceedings are by a constable.

The court are of opinion that the law well authorizes the summoning of the jurors, in rail road cases, by the sheriff or his deputy; and that it is no objection to the regularity of the proceeding, that the jurors were not notified by a constable.

We do not mean to intimate that a notice to the jurors, by a constable, and an attendance by them in pursuance of such

notice, all the proceedings being regular, would vitiate the verdict. However that may be, we are satisfied that a notification to the jurors, by the officer to whom the warrant is directed, is good and sufficient in law.

5. The further questions in this case arise upon the ruling of the presiding officer, upon the admission of evidence. In relation to the evidence which was admitted as to the price paid by the rail road corporation for the adjacent lot, we think it was competent. This was evidence of a fact, and not of an opinion. The price for which other adjacent lots had been actually sold was admissible, open of course to any evidence explanatory of the circumstances attending such sale, and tending to show why the purchasers gave a price greater than the true value of the land. If it had been a price fixed by a jury, or in any way compulsorily paid by the party, the evidence of such payment would be inadmissible before the jury. Upon the principle on which we should admit evidence of other sales between other parties of adjacent lots, this evidence was admissible, and none the less so because the rail road corporation were themselves the purchasers.

6. The next objection taken is that to the competency of an inquiry put to a witness, of the following purport: " A witness who was a farmer, and had occasionally bought and sold land, was asked what, in his judgment, was the then value of his own land next adjoining the land of the petitioner." This evidence does not come from an expert, or one properly entitled to give an opinion as an expert. Whether the presiding officer did or did not so consider him, is not quite clear. As to the competency of evidence of mere opinions, although the law of this Commonwealth is very liberal, more so than in some of our sister States, yet opinions are not deemed competent evidence, except when given by experts, unless upon some controlling ground of necessity, resulting from the nature of the inquiry. The evidence of opinion of the value of the property, that is the subject of the litigation, is of this character, and is admitted from the necessity of the case. Without it, you cannot, in many cases, bring before the jury such

facts as will enable them to render a verdict for the proper damages for the value of the article which is the subject of damages. But such evidence of mere opinion as to the value of property is to be confined exclusively to the subject in reference to which damages are claimed. If you would aid the jury by reference to other articles, or property similarly situated, the evidence in reference to such other articles or other property must be that of facts, and not opinions. It is only by reference to facts that exist respecting the property, that a comparison is to be made that may aid the jury in estimating the value of the property in relation to which they are to assess damages. To allow any thing beyond this would be unnecessarily sanctioning the introduction of evidence of opinions of witnesses — evidence always somewhat objectionable in its character, and to be excluded as far as is practicable. We think it was not competent for the party claiming damages to introduce the speculative opinion of the witness as to the value of adjacent land, and especially his opinion of the value of his own land, and, by the effect of such testimony, form a standard of comparison by which the jury might estimate the value of the land which was the subject of controversy. This testimony, in the opinion of the court, ought to have been excluded.

It was suggested, upon the argument, that the subsequent instructions of the presiding officer, as to the evidence of opinions, obviated the objection to the admission of this evidence. We are apprehensive that those remarks were not intended by him as excluding the evidence now under consideration. The jury were not instructed that the evidence was inadvertently admitted, but was now held incompetent, and to be rejected by them. This testimony having been improperly admitted, the verdict must, for this cause, be set aside, and the case sent to a new jury.*

---

* In the case of JAMES BROWN *vs.* THE BOSTON & WORCESTER RAIL ROAD CORPORATION, argued and decided at this term, said Brown had obtained a verdict for damages caused by the construction of the respondents' rail road in such a manner as to injure his land situate in the town of Framingham. The

court set aside the verdict because a part of the jurors were taken from that town; the respondents having objected to the competency of those jurors before the jury was empannelled.

*G. Bemis*, for the respondents.

*Mellen*, for the petitioner.