# The Chicago, Kansas & Nebraska Railway Company v. John T. Stewart *et al.*

1. Condemnation Proceeding —*Value of Land Taken—Expert Evidence.* Where farmers or others give their opinions, as experts, as to the market value of land with which they are acquainted, it is not improper, upon cross-examination, for the purpose of testing their knowledge and competency, to inquire of them concerning the sales of adjoining land.

2. Instructions, *When to be Given.* Instructions are not to be given unless applicable to the facts disclosed upon the trial.

*Error from Sumner District Court.*

Condemnation proceedings by the *Chicago, Kansas & Nebraska Railway Company* for a right-of-way through the northwest quarter of section 2, in township 32, in range 1 west, in Sumner county, in this state. The condemnation commissioners awarded the land-owners $1,999. Both the railway company and the land-owners appealed from this award to the district court of said county. The appeals were consolidated and tried together under the title of John T. Stewart and A. A. Richards *v.* The Chicago, Kansas and Nebraska Railway Company. In the district court the land-owners filed a petition which alleged, among other things, that "the land lies near to the populous and growing city of Wellington, the county-seat of the county of Sumner; that the main public road and thoroughfare leading from the northern portion of said county to the county-seat runs along the east line of the land; and that on the 10th day of May, 1887, the land, before being invaded by the ruthless and destroying hand of the defendant, was the most beautiful, finest, and desirable tract of land in said county. It laid like a daisy, smooth as a kitten. Shimmering in the sunlight of that Kansas spring morning, nothing could be handsomer."

The jury returned a verdict for the land-owners against the

railway company for $2,330.70.	They also made the follow-
ing special findings of fact:

"1.	From what time do you allow interest to the plaintiffs?
A.	From May 10, 1887.

"2.	How much do you allow the plaintiffs for interest?
A.	$230.70."

Special interrogatories numbered 1, 2, 4, 6, 15, and 16,
asked by the defendant, and the answers thereto, are in the
words and figures following, to wit:

"Ques. 1.	What was the fair market value of the farm in
question immediately before the condemnation of defendant's
right-of-way over the same?	Ans.	$8,000.

"Q. 2.	What amount of land was there in the farm in
question just before defendant's right-of-way was condemned
over the same?	A.	$158\frac{35}{100}$ acres."

"Q. 4.	What amount of land was taken for the right-of-
way of defendant?	A.	$7\frac{18}{100}$ acres."

"Q. 6.	What was the amount of land left on the east side
of defendant's right-of-way?	A.	$17\frac{7}{100}$ acres."

"Q. 15.	What was the fair market value of the plaintiffs'
farm immediately after the condemnation of defendant's right-
of-way over plaintiffs' farm?	A.	$5,900.

"Q. 16.	What sum do you allow in your total estimate of
damages for the perpetual use of the land taken for the defend-
ant's right-of-way?	A.	$362.73."

The *Railway Company* filed its motion for a new trial, con-
taining 17 grounds therefor.	This motion was overruled, and
judgment rendered upon the verdict.	The *Railway Company*
excepted, and brings the case here.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.

*James Lawrence*, and *A. A. Richards*, for defendants in
error.

The opinion of the court was delivered by

HORTON, C. J.: Appeal from an award made by commis-
sioners to lay off and condemn a right-of-way for a railway
company.	The commissioners awarded the land - owners
$1,999.	Both parties appealed.	Upon the trial, the jury

45 — 47 KAS.

returned a verdict for the land-owners against the railway company for $2,330.70. Judgment was entered thereon. The railway company excepted, and brings the case here. Upon the trial, the railway company introduced as witnesses J. W. Morris, A. M. McConkey, and John S. McMahan, who were farmers living in the vicinity of the land in controversy, and acquainted with the value thereof. Two of these witnesses testified that the land was worth $2,500; another of these witnesses testified the land was worth $25 an acre. For the purpose of testing the knowledge and competency of these witnesses, the owners inquired of them, upon cross-examination, concerning the sales of adjoining land. The propriety of allowing proof of the sales of similar property to that in question, made at or about the time of the taking, is sustained by some of the authorities and opposed by others. Such proof is held competent in Illinois, Iowa, Massachusetts, New Hampshire, New York, and Wisconsin, and wholly incompetent by the courts of Pennsylvania and Minnesota. (Lewis, Em. Dom., § 443.) In a Massachusetts case it was said that—

"The price for which other adjacent lots had been actually sold was admissible, open, of course, to any evidence explanatory of the circumstances attending such sale, and tending to show why the purchasers gave a price greater than the true value of the land. If it had been a price fixed by a jury, or in any way compulsorily paid by the party, the evidence of such payment would be inadmissible before the jury. Upon the principle on which we should admit evidence of other sales between other parties of adjacent lots, this evidence was admissible, and none the less so because the railroad corporation were themselves the purchasers." (*Wyman v. Railroad Co.*, 54 Mass. 316.)

The objections to evidence of special sales of land are stated in *East Pennsylvania Railroad v. Heister*, 40 Pa. St. 53, where the court, speaking of similar evidence received in that case, says:

"It did not pretend to fix the market value of the land, but assumed to ascertain it by the special, and it may be excep-

tional, cases named.   This would not do; for, if allowed, each special instance adduced on the one side must be permitted to be assailed, and its merits investigated, on the other; and thus would there be as many branching issues as instances, which, if numerous, would prolong the contest interminably.   But even this is not the most serious objection.   Such testimony does not disclose the public and general estimate which, in such cases, we have seen is a test of value.   It would be as liable to be the result of fancy, caprice or folly as of sound judgment in regard to the intrinsic worth of the subject-matter of it, and consequently would prove nothing on the point to be investigated.   The fact as to what one man may have sold or received for his property is certainly a collateral fact to an issue involving what another should receive, and, if in no way connected with it, proves nothing.   It is therefore irrelevant, improper, and dangerous."

See, also, *Stinson v. C. St. P. & M. Rly. Co.*, 27 Minn. 284–289; *Railway Co. v. Splitlog*, 45 Kas. 68; *K. C. & T. Rly. Co. v. Vickroy*, 46 id. 248.   In this case, however, the land-owners did not prove or offer to prove, to make out their case, any special sales of property adjoining the land in dispute.   The evidence objected to was drawn out upon cross-examination, and we think, where experts or persons are permitted to give their opinions as to value of land, a cross-examination of the kind referred to is not improper, or any ground for the reversal of a case. (*K. C. & T. Rly. Co. v. Vickroy*, 46 Kas. 248.) In that case it was decided that—

"In appeals from the awards of commissioners in condemnation proceedings, opinions as to the value of property should be confined to the property in question, unless on cross-examination, for the purpose of testing the knowledge and competency of the witness, the value of adjoining property is inquired of."

The railroad company asked the court to instruct the jury —

" That in assessing the damages done to the land by reason of the appropriation of a right-of-way through it for a railroad, the liability of teams being frightened, or the additional care by the land-owner made necessary in the future as to such teams, by reason of the proximity of such railroad, does not of itself constitute any grounds for special compensation;

such damages are speculative, and not the proper subject of inquiry and damage."

This instruction was*refused. Where such an instruction is applicable or necessary, it should be given. The instruction has been approved by this court in many cases. But the facts disclosed upon the trial hardly show that this instruction was needed in this case. The land in dispute consists of about 160 acres near the city of Wellington; only 10 to 15 acres at the time of the taking were broken, the remainder of the land was raw prairie, without improvements. There was no evidence offered or attempted to be offered in the case concerning teams being frightened by reason of the proximity of the railroad. The general charge to the jury seems to have been fair, and fully in accord with the decisions of this court for like cases. We do not think the refusal to give the instruction prayed for, considering the testimony offered, was prejudicial. It does not appear from any of the special findings that the liability of teams being frightened was an element in the damages returned.

The judgment of the district court will be affirmed.

All the Justices concurring.