THE KANSAS CITY & TOPEKA RAILWAY COMPANY V. THOMAS VICKROY.

1. CASE, *Followed.* The case of *K. C. & T. Rly. Co. v. Splitlog*, 45 Kas. 68, (25 Pac. Rep. 202,) referred to and followed.

2. EMINENT DOMAIN — *Compensation* — *Opinion Evidence.* In appeals from the awards of commissioners in condemnation proceedings, opinions as to the value of property should be confined to the property in question, unless on cross-examination, for the purpose of testing the knowledge and competency of the witness, the value of adjoining property is inquired of.

*Error from Wyandotte District Court.*

THE opinion states the material facts. Judgment for plaintiff, *Vickroy*, at the September term, 1888. The defendant *Railway Company* brings the case to this court.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.

*Thos. P. Fenlon*, and *Jno. A. Hale*, for defendant in error.

*Per Curiam:* Thomas Vickroy appealed from an award made by commissioners to lay off and condemn a right-of-way through his premises in Wyandotte county for the Kan-

sas City & Topeka Railway Company. The award made by the commissioners was as follows:

Amount of land taken, $3\frac{96}{100}$ acres.

| | |
|---|---|
| Value of land taken | $29,850 |
| Amount of damages to land not taken | 2,500 |
| House | 450 |
| Total | $32,800 |

The jury returned a verdict for Vickroy, and assessed his damages at $49,525.50. They valued the land actually taken for a right-of-way at $10,000 per acre, and upon this they allowed interest amounting to $2,425.50. They allowed $7,500 as damages to the land not taken. The trial court rendered judgment upon the verdict of the jury, of which the railway company complains. The tract of land out of which the right-of-way was appropriated is acre property, amounting to about fifteen acres. It is in the town of Armourdale. No part of the tract has ever been platted as a part of or as an addition to the town. The tract is 990 feet long by 666 feet wide. The right-of-way was condemned out of the northern portion of the tract, leaving a strip of land about 136 feet wide on the north, and a strip about 350 feet wide on the south side of the right-of-way. It was claimed by the plaintiff below that the market value of the strip of land north of the right-of-way was depreciated by the appropriation, and the jury so found. No claim was made for damages to the land south of the right-of-way, the plaintiff having testified that that part of the land sustained no damage or injury. The north side of the property is bounded by a large tract of unsettled and unimproved land, belonging to the Union Pacific Railroad Company. The south side is bounded by acre property, subdivided into blocks, and on the east and west are alleys 15 feet wide. On the east and west of the alleys, the land has been platted into lots. The land was called by the owner "a farm on a small scale." On the north strip, above the right-of-way, is a frame house, the main building of which is 36x20 feet, with an "L" addition 15x20 feet—a two-story building. The house cost about $1,900.

Upon the trial, the plaintiff below, over the objections and exceptions of the railway company, introduced evidence showing the market value of the lots adjoining and also adjacent to the tract of land upon the east and west sides thereof. These lots were on different streets of Armourdale. Some of the lots were upon business streets, with business houses upon them, others were residence lots, improved. Some of the lots were near the tract of land through which the right-of-way was taken, and others were several hundred feet away. Some of the lots were on Kansas avenue, the principal business street of Armourdale, and about three hundred feet south of the tract of land. The plaintiff also offered evidence of the number of lots that his tract of land could be divided into, the size of the lots, and the value of the lots, if the tract were platted and so divided. Among other evidence of this kind was the following:

Thomas Vickroy:

"Ques. How many lots of the size of the lots that you have estimated to be worth from $1,250 to $1,800 could be made out of your property, per acre?

"By Mr. Hutchings: We object to that as incompetent, irrelevant, immaterial, and cross-examination of the witness.

"By the Court: Has not been shown to know anything about it, or that he has had any experience in platting.

"Q. By Mr. Fenlon: You know the size of these lots, do you? A. Yes.

"Q. Taking the size of these lots, how many would constitute an acre?

"[Objected to by defendant's counsel on grounds last before stated. Objection overruled by the court. Defendant duly excepted.]

"A. Ten; it will make ten lots out of an acre."

In *K. C. & T. Rly. Co. v. Splitlog,* 45 Kas. 68, (25 Pac. Rep. 202,) it was said in a case very much like this that—

"While there is a want of harmony in the authorities, we think the weight of authority holds that where expert witnesses are called to testify as to value in damage cases, or where, under the exception to the general rule that none but experts may give opinions, non-expert witnesses, familiar with

the subject of the controversy, are permitted to give opinions as to values, such evidence — that is, such opinions as to values — should be confined to the market value of the property in controversy in all cases where witnesses can be obtained who are familiar therewith.  .  .  .  Witnesses testifying as to the value of such land may consider any use to which the ground may be presently put in forming their opinions as to its value, and its surroundings may be shown to the jury, its nearness to or distance from a town, village, or city, or other improvements that tend to affect its value; but the jury are to value the land as a whole in the condition in which it was when taken. They have nothing to do with its subdivision into lots or blocks.  They may consider its location, and the effect its location has upon its value as a whole; but the evidence as to how many lots it would make, and what they would sell for after the subdivision, is wholly improper."

The principle announced in that decision controls this.  As already decided by this court, opinions as to the value of property in such cases as this should be confined to the property in question, unless on cross-examination, for the purpose of testing the knowledge and competency of the witness, the value of adjoining property is inquired of. ( Lewis, Em. Dom., § 435; *Wyman v. Railroad Co.,* 13 Metc. 316.)

Among other of the cogent reasons why the foregoing evidence referred to should have been rejected, is, that such evidence introduced into the case collateral issues as to the value of lots, improved or unimproved, near by and also distant from the tract of land in controversy.  Further, in this case, Thomas Vickroy, R. B. Armstrong, George W. Betts, and others, testified that they knew the market value of the tract of land from which the right-of-way was taken, and also testified as to its market value; hence there was no difficulty in finding witnesses who could testify as to the value of the property.  Exceptional evidence was not needed.  The trial court attempted to correct, by its instructions, the error into which it fell, but it did not expressly withdraw from the consideration of the jury the erroneous evidence commented upon; hence the errors were not cured.

Counsel for plaintiff below refer to *Railroad Co. v. Chap-*

*man*, 38 Kas. 307; *Railroad Co. v. Ehret*, 41 id. 22; *Railroad Co. v. Cosper*, 42 id. 561; and several other similar decisions of this court. These decisions do not conflict with the recent opinion handed down in *K. C. & T. Rly. Co. v. Splitlog*, supra. In all of these decisions, the witnesses testified as to the value of the land in controversy. They did not testify as to the specific value of adjoining farms, or adjacent farms, or adjoining lots or adjacent lots, or other farms or lots in the vicinity. In the Chapman case, unlike this case, the property had no market value. But even in that case it was said:

"Where property has a market value the rule is strict, and requires only that value to be shown; but where it is shown that the property is without a market value, then the law allows the next best evidence to be given to ascertain its value. The property then may be compared with other property; its value may be determined by persons who are shown to be judges, or who have knowledge of the values of real estate in that vicinity; and their opinions may be given of the value of the property [in question], which in this case was the best evidence it was possible to secure."

We approve all that was said in the Chapman case, and all of the other decisions of this court referred to, concerning opinion evidence as to the value of the property taken or injured; but those cases do not reach the Splitlog, or this case. We expressly affirm all that was said by Mr. Justice BREWER in *Railway Co. v. Paul*, 28 Kas. 281, as follows:

"The values of real estate, especially in localities where there are few changes in property, are not so absolutely certain, and cannot be determined with absolute exactness; and in respect to them the testimony of witnesses partakes largely of the nature of opinions. And yet, from the necessities of the case, it has come to be recognized that such testimony is competent. It is the best that, in the nature of things, can be obtained; for a description by a witness of the locality of any given tract, its improvements and surroundings, would ordinarily throw little light upon the question of its value. So many things enter into and affect such value that a witness would be unable to describe them all, or even to comprehend them all fully. Hence it has become pretty generally established that a witness who testifies that he is acquainted with

the values of real estate in the locality, may give his opinion as to the value of any particular tract" [in question].

If the rule thus stated had been followed in the introduction of the evidence in this case, and the witnesses who resided in the vicinity of the tract of land appropriated or injured, and who were familiarly acquainted with the tract, its location, advantages, character, etc., had merely testified to the value of the land taken, and the value of the land not taken before and since the injury of which complaint is made, there would not have been any ground for reversal upon the matters commented upon.

The judgment of the district court will be reversed, and the cause remanded for a new trial.