### Jacob A. Harman et al., Plaintiffs in Error, v. Indian Grave Drainage District, Defendant in Error.

1. Trial, § 68*—*when offer of proof is proper.* It is not proper to make an offer of proof until the court has sustained an objection to a question propounded for the purpose of eliciting the desired evidence.

2. Trial, § 68*—*what is improper offer of proof.* The statement in an offer of proof, made in an action to recover for services rendered under a contract to make plans, etc., for defendant, that the witness would testify that after plaintiffs had furnished the plans, etc., they were accepted by defendant, whereas his previous testimony showed that the original plans were not accepted, but they were caused to be altered, is objectionable as an offer to prove a conclusion of law, and objection is properly sustained thereto.

3. Trial, § 68*—*what is proper manner of making offer of proof.* In an action to recover for services rendered under a contract to

*See Illinois Notes Digest, Vols. XI to XV. and Cumulative Quarterly, same topic and section number.

make plans for defendant, an offer of proof as to the acceptance of such plans should not be to prove that defendant accepted such plans, but to prove facts tending to show that he had accepted them.

4. TRIAL, § 68*—*when offer of proof may be rejected.* When an offer of proof embraces evidence which is in part inadmissible, the whole offer may be rejected.

5. TRIAL, § 68*—*when offer of proof is objectionable.* In an action to recover for services rendered under a contract to furnish drainage plans to defendant which contains a provision as to the manner in which the funds to pay for such services shall be raised and that, under certain circumstances, payments may be delayed or postponed, where, though the abstract shows that leave was granted to file special counts it does not show that any were filed and none are set out therein or mentioned in the briefs and arguments, an objection was held to have been properly sustained to plaintiffs' offer to prove that after the plans were furnished by plaintiffs they were accepted by defendant and paid for; that thereafter plaintiffs, at defendants request and under the provisions of the contract, aided defendant in securing the confirmation of the assessment and in spreading the assessment; that the value of such services was a certain amount; that plaintiffs, after the acceptance of the plans, the rendition of such services and the payment of a stated amount by defendant, rendered further services to defendant at its request in modifying the plans previously accepted and paid for by it, which additional services were of a certain value of which a certain sum had been paid.

6. ASSUMPSIT, § 33*—*when common counts will lie.* Where an agreement for services has been fully performed by the one who was to render them and nothing remains to be done but the payment for the services, and the contract contains nothing as to the time or manner of payment, the common counts will lie for the recovery of the contract price.

7. CONTRACTS, § 352*—*when contract must be specially declared on.* Where, under a contract for services, the payment is to be made in a particular manner or is to be controlled as to time. by the happening of particular events, the contract must be declared on specially, in an action to recover for such services, and all the conditions in regard to the payment must be shown to have been fulfilled and that the money is then due and payable.

Appeal from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

John E. Wall and Arthur Keithley, for plaintiffs in error.

Walter P. Martindale and Govert & Lancaster, for defendant in error.

Mr. Justice Eldredge delivered the opinion of the court.

Plaintiffs in error and defendant in error entered into the following contract:

"1. This agreement made and entered into in triplicate this 31st day of May, 1912, by and between the Harman Engineering Co., of Peoria, Illinois, party of the first part, and the Indian Grave Drainage District, a public levee and drainage corporation of the County of Adams and State of Illinois, by its commissioners, Arthur Weber, Henry Vahle and Sheldon G. Earel, party of the second part, witnesseth:

"2. That whereas the said commissioners of said Drainage District have this day appointed Jacob A. Harman, of the said Harman Engineering Co., as engineer for said Drainage District to make surveys and prepare plans for additional drainage ditches, pump plants and other works necessary to protect from overflow and completely drain the lands within said Drainage District; it is, therefore, hereby agreed as follows:

"3. That the said Harman Engineering Co. shall furnish the services of said Jacob A. Harman as chief engineer, and the services of such assistant engineers, instrument men, draftsmen, recorders and other help as shall be needed from time to time under the direction of the commissioners of said Drainage District to make and furnish to said party of the second part, the necessary topographical surveys, plans, profiles, estimates of cost and reports upon the work necessary for the complete drainage of the lands within said Drainage District, as required and provided by the laws of the State of Illinois in the matter of an application for a special assessment of benefits for

THIRD DISTRICT—APRIL, 1920.        505

Harman v. Indian Grave Drainage District, 217 Ill. App. 502.

such proposed improvement upon the lands benefited thereby, and sufficient for such purpose, and also a complete detail, topographical survey and map of the lands benefited by such improvement, on a scale of not less than thirteen inches to the mile, showing the levels of each 40 acre tract of land, and less, if the ownership thereof is divided.

"4.   It is further understood and agreed by the parties hereto that the said Harman Engineering Co. shall render any services that the commissioners of said Drainage District may need and request in the establishment of the plans in court or otherwise, and in the preparation and confirmation of the assessment roll.

"5.  It is hereby agreed that the rate of compensation for all the services necessary to be rendered to said Drainage District in the making of a topographical survey, plans, estimates and reports and all the work in connection with the establishment of the plans in court or otherwise, and in the preparation and confirmation of the assessment roll shall be as follows:

"For the services of Jacob A. Harman as chief engineer, at the rate of ...............$25.00 per day

"For assistant engineers, at the rate of ..............................$10.00 per day

"For instrument and draftsmen, at the rate of........................$ 6.00 per day

"For recorders, at the rate of......$ 4.00 per day

"For all necessary help and for the necessary living and traveling expenses of said chief engineer, assistant engineers and other help, the cost thereof; time and expenses from the home office of the Harman Engineering Co. (Peoria, Illinois) and return, or from such other points as employees shall come, provided that such time and expense shall not be greater than time and expense from Peoria, Illinois.

"It is further understood that the necessary help on such surveys shall be procured locally wherever it is practicable.

"7.   It is further understood and agreed that whenever it shall be necessary to use camp equipment for

506    Appellate Courts of Illinois.

Harman v. Indian Grave Drainage District, 217 Ill. App. 502.

the surveying party to properly carry on the surveys, the said Harman Engineering Co. shall furnish at its own expense said necessary camping equipment, and that the said Drainage District shall pay for the use of said camping equipment a sum which shall be equal to ten per cent (10%) of the bill for engineering services rendered in accordance with the foregoing paragraph, such percentage to be limited to the bills rendered for the work while such camp is in service.

"8. It is further understood and agreed that the said Harman Engineering Co. will render itemized bills on or about the tenth day of each month, and at such other times as shall be required by said commissioners, or their successors, of the value of the services rendered and expense incurred for said Drainage District for the preceding calendar month, and that the commissioners of said Drainage District will on or about the tenth day of each month pay the said Harman Engineering Co. for such services and expenses for such preceding month, in accordance with the terms as aforesaid.

"9. It is further understood and 'agreed that the said Harman Engineering Co. shall proceed promptly to make the necessary surveys, plans, estimates and reports with estimates of cost, as required by the statutes of Illinois, for the commissioners to make their report to the court preliminary to the adoption of plans for said Drainage District, and shall furnish to said commissioners at the earliest practicable moment such plans, profiles, report, estimates of cost, as are required by law.

"10. It is further understood and agreed that said Harman Engineering Co. estimates that the cost of the surveys, plats, plans and profiles and reports required for the establishment of the plans and levying of the assessment for said Drainage District will not exceed the sum of Fifty-three Hundred Dollars ($5,300.00) and that said party of the second part hereto shall not be liable under this contract for a greater sum than Fifty-three Hundred Dollars for the complete topographical surveys, plans, estimates and report of

cost for the additional work for such Drainage District inclusive of the expenses of camp equipment and all other expenses and costs connected with this employment; provided, that for any services rendered in court, or otherwise, in the establishment of the plans and the preparation and establishment of the assessment roll, payment shall be made at the per diem and expense rates herein set forth.

"11. It is further agreed that the services performed by said first party, and its various assistants and employes, shall at all times be under the direction and control of the commissioners of second part, and that said commissioners shall at all times have the right to order a discontinuance of the work by first party under this contract, if for any reason there should be any cause for delay or suspension of work in said Drainage District, and in such case the first party shall only recover such sum as may have been earned by it under this contract to the time of receiving notice of such suspension.

"12. It is further understood and agreed by and between the parties hereto and this contract is made and entered into with the thorough understanding that the commissioners now have no funds in their hands available for the payment of the consideration provided in this contract; that the annual repair tax of the District is approximately Five Thousand Dollars; that the amount which the commissioners can borrow in anticipation of the payment thereof is Thirty-three Hundred Dollars; that such sum will be available about July 10, 1912; and that the balance of the consideration herein provided for must be advanced by land owners or raised by a special assessment; that it is expected that such advance will be made by interested land owners, but that in the event of a failure thereof, it is the intention of the commissioners to make application to the County Court of Adams County, Illinois, for a special assessment for such purpose at the July term, 1912, if practicable, but at all events at or before the August term, 1912, of said court; and that to such extent the payments herein provided for shall be delayed and postponed.

508    APPELLATE COURTS OF ILLINOIS.

Harman v. Indian Grave Drainage District, 217 Ill. App. 502.

"It is further understood and agreed that this contract is an obligation of the Indian Grave Drainage District; and that it does not and shall not create any personal liability against the commissioners or any or either of them as individuals."

Plaintiffs in error brought this action in assumpsit to recover for an alleged balance due under the terms of this contract. The pleadings are abstracted as follows: "Declaration filed May 30, 1917, consisting of the common counts with detailed copy of account sued on, also copy of instrument sued on which is hereinafter set out in full. Plaintiffs obtain leave to amend their declaration and file two special counts declaring especially upon the contract heretofore referred to. General issue pleaded to whole declaration."

The first and only witness called was Jacob A. Harman, who testified that plaintiffs in error made surveys of the lands in the Drainage District and plats and topographical maps thereof, estimates of the cost and a report, and delivered the same to defendant in error. That the drainage commissioners took the said plans, etc., under consideration and attended public meetings with the landowners; that some weeks or months later, at the suggestion of the commissioners, some changes were made in the plans and he was directed to prepare them for filing in court according to the changes; that all the work which had been done in the preparation of the plans for delivery in the first instance had been paid for in the sum of $4,969.90. Then the following question was asked the witness: "Now, you may tell the jury how much work you did subsequently to the payment by the defendant of this $4,969.90?" Counsel for defendant in error objected to the question on the ground that it was immaterial. Up to this time, the contract had not been introduced in evidence and the court intimated that he would be unable to pass upon the materiality of the evidence sought without knowing the terms of the contract. Thereupon, the contract

was introduced in evidence and the court heard the arguments of counsel on their respective views of the proper construction of the contract. Before the court passed upon the objection to the question above quoted, counsel for plaintiffs in error offered to prove by the witness "that after the plaintiffs had furnished the complete plans and profiles that they were accepted by the defendant and paid for and that the various monthly payments amounted in the aggregate to $4,969.90. And that thereafter plaintiffs, at the request of the defendant and under the terms and provisions of the contract in controversy, furnished services for the defendant in securing the confirmation of the assessment roll in the county court, in assisting in the preparation of the assessment roll and in spreading the assessment upon the lands to be benefited in said Drainage District, and that the value of said services rendered by the plaintiffs at the request of the defendant at the rate provided in said contract amounted to $2,500.00. That the plaintiffs, after the acceptance of said plans by the defendant, and after the payment of said sum of $4,969.90, furnished additional services for the defendant, and at its request, in the changing, alteration and modification of the said plans so submitted to said defendant and accepted and paid for as aforesaid, and that the value of said services rendered by the plaintiffs in making said changes, alterations and modifications at the contract rate, amounted to $600.00—$400.00 of which has already been paid." Counsel for defendant in error objected to the offer. The court sustained the objection and plaintiffs in error rested their case. No other evidence was introduced by either party and the court directed the jury to find the issues for the defendant.

This offer of proof was made before the court had ruled upon the objection to the question and was, therefore, premature. It is not proper to make an

offer of proof until the court has sustained an objection to a question propounded for the purpose of eliciting the desired evidence. The statement in the offer that the witness would testify that after the plaintiffs had furnished the plans, etc., that they were accepted by the defendant was an offer to prove a conclusion of law. The previous testimony of the witness showed that the original plans were not accepted by the defendant in error, but were caused to be altered and changed by the defendant in error after the drainage commissioners had consulted with the landowners. It is not error to sustain an objection to an offer to prove a mere conclusion. The offer should have been to prove facts tending to show that defendant in error had accepted the plans. *Martin v. Hertz,* 224 Ill. 84. When an offer of proof embraces evidence, a part of which is inadmissible, the whole offer may be rejected. *Cressey v. Kimmel,* 78 Ill. App. 27.

The abstract does not show that any special counts were filed, and the evidence offered in any event would have been inadmissible under the common counts. Where an agreement for services has been fully performed by the party who was to render them and there is nothing in the contract in relation to the time or manner of payment and nothing remains to be done but the payment for the services performed, the common counts will lie for the recovery of the contract price for such services, but where the payment is to be made in a particular manner or is to be controlled as to time by the happening of particular events, then the contract must be declared upon specially and all the conditions in regard to the payment shown to have been fulfilled and that the money is then due and payable. *First Nat. Bank v. Hart,* 55 Ill. 62; *Meyers v. Phillips,* 72 Ill. 460. Paragraph 12 of the contract specifically provides how the funds for the payment of the services shall be raised and also that under

certain conditions the payments may be delayed or postponed. A special count was necessary to show that the conditions authorizing the payments had been fulfilled and that the money was then due and payable. While the abstract shows that leave was granted to file special counts, it does not show that any were filed and none are set out therein or mentioned in the briefs and arguments. The evidence tendered by the offer of proof was not admissible under the common counts and it is unnecessary for us to consider the questions raised upon the construction of the contract.

The judgment of the circuit court is affirmed.

*Affirmed.*