[APRIL TERM, 1928]

## MORRISON v. COTTONWOOD DEVELOPMENT CO.
## TODD v. SAME
(Nos. 1419, 1421; April 2, 1928; 266 Pac. 117)

192

*O. N. Gibson, A. H. Maxwell,* and *Louis Kabell, Jr.,* for plaintiffs in error.

*Haggard & O'Mahoney,* for defendant in error.

RINER, Justice.

The Cottonwood Development Company, defendant in error here and hereinafter referred to as the plaintiff, is a corporation organized under Wyoming law and vested by that law with the power of eminent domain. Needing a right of way for its irrigation canal, it instituted—in the District Court of Fremont County—two actions for the condemnation thereof. In one action Caroline Rich, Helen Milliken, Mary Wright, Elizabeth Miller, Agnes C. Burk, W. I. Todd and A. P. Summers were made defendants. In the other action John H. Morrison was the sole defendant. The cases were ultimately transferred for trial to the District Court of Sublette County, Wyoming, and, by stipulation of the parties, they were consolidated and tried as one action, before a jury. In the first action, the first five named defendants appear to be designated in the record as the "Sutton Heirs"—being the heirs at law under the Sutton Estate. The amount of land appropriated for plaintiff's right of way, thru the lands of the respective defendants, was approximately 25-6/100 acres from the Sutton Estate lands, 25-76/100 acres from the Summers lands,

12-98/100 acres from the Morrison lands, and 8-20/100 acres from the Todd land. The trial consumed some ten days and a voluminous record resulted. The jury, upon the evidence submitted to it and after viewing the lands involved and the right of way appropriated, made its awards to the several defendants, those given to the defendants Todd and Morrison being considerably larger than those allowed the Sutton Heirs and the defendant Summers. In the one case, the Sutton Heirs and Summers acquiesced in and accepted the awards given them by the jury. The other defendant, W. I. Todd, in that case, being dissatisfied, prosecuted proceedings in error to this court—the same being No. 1421. In the other case, the defendant John H. Morrison would not accept the award fixed and also instituted proceedings in error—the same being numbered here as 1419. By agreement of the parties and consent of the court, both Case No. 1419 and Case No. 1421 have been submitted together and without separate briefs. Under this arrangement, both cases can and will be considered and disposed of by one opinion. The owners of the lands below will be, for convenience, hereinafter designated as the defendants.

Complaint is made that the court erred in permitting cross-examination of some of defendants' witnesses concerning sales of property, concerning which nothing had been said in their direct examination. But it appears that the witnesses so interrogated had testified in the course of their examination in chief that there were no sales of other lands in the vicinity of the lands involved in the proceedings, and no market value therefor. We think it was proper that such witnesses should be asked on cross-examination about other sales which had occurred in the neighborhood in order that their knowledge on the subject might be tested. In Rea v. Pittsburg etc. Co., 229 Pa. 106, 78 Atl. 73, the Supreme Court of Pennsylvania, in quoting from one of its previous decisions, said:

"Where the witness has testified to value, his good faith and accuracy and the extent of his knowledge may be tested on cross-examination by questioning him as to particular sales of property similarly situated to ascertain whether he knew of them and considered them in forming an opinion."

In Oregon etc. Co. v. Eastlack, 54 Ore. 196, 102 Pac. 1011, the court, after referring to the fact that in some jurisdictions evidence of sales of similar property to that in question, made at or about the time of taking, while not allowed in some jurisdictions, is, according to the authorities, "almost unanimously approved," remarked that:

"On cross-examination of an expert witness testifying as to value, for the purpose of testing his knowledge of the market value of land in the vicinity, he may be asked to name such sales of property, and the prices paid therefor, as have come to his attention. In re Thompson, supra, (127 N. Y. 463, 28 N. E. 389, 14 L. R. A. 52); Elliott on Railroads, (2d Ed.) Sec. 1036; Greenleaf on Evidence, (15th Ed.) Sec. 448; C. P. R. R. Co. v. Pearson, 35 Cal. 247-262; Kansas City & T. R. Co. v. Vickroy, 46 Kan. 248-250, 26 Pac. 698; Chicago, K. & N. R. Co. v. Stewart, 47 Kan. 703-706, 28 Pac. 1017."

In Chicago etc. Co. v. Stewart, 47 Kan. 704, 28 Pac. 1017, where witnesses had testified in condemnation proceedings that the land was worth certain amounts, upon cross-examination they were required to testify concerning sales of other lands, and, in approving this action of the trial court, the reviewing court said:

"We think, where experts or persons are permitted to give their opinions as to value of land, a cross-examination of the kind referred to is not improper, or any ground for the reversal of a case. Railway Co. v. Vickroy, 46 Kan. 248, 26 Pac. Rep. 698."

The action of the trial court is criticized in that on re-direct examination of one of the defendants' witnesses, he

was not permitted to testify concerning a sale of property asked about on cross-examination. But an examination of the record reference in that connection discloses that the witness was expressly asked by the court to tell what he knew about the matter, and only prevented from testifying to what was clearly hearsay.

Certain exhibits of gravel, used by one of plaintiff's expert engineers, were received in evidence by the court and this is claimed to be error, because they were admitted without proper proof connecting them with the lands in controversy. These exhibits were taken from the lands of the other defendants similarly situated. Those defendants have acquiesced in the awards made them and do not here complain. The exhibits were also illustrative and corroborative of the testimony of the expert engineers as to the character of the soil found under all of these lands. They were properly received in evidence.

Two sketches were made by the plaintiff's witness Winsor, an expert engineer, and were received in evidence by the court to illustrate his testimony concerning the physical characteristics of certain strata formations in the lands involved and the action of water in certain pits and pipes used by him in and about the canal of the plaintiff, to establish his theory concerning the source of the water appearing upon the lands of the defendants through seepage—a question which was very elaborately discussed by several witnesses and counsel for all the parties. It is objected that these sketches were not drawn to scale and hence inaccurate. An examination of them, in connection with the testimony of the witness in the record, establishes that both the witness and the trial court made it clear to the jury that they were merely illustrative of, and to be considered only in connection with, the witness's testimony. It is well established that a map or diagram not mathematically accurate may be admitted to be used in the course of the testimony of a witness to enable him to explain matters as to which he testifies, although it would not be admissible as inde-

pendent evidence. See State v. Hunter, 18 Wash. 670, 52 Pac. 247; Turner v. United States, 66 Fed. 280; Brown v. Galesburg etc. Co., 132 Ill. 648, 24 N. E. 522; Hoffman v. Harrington, 44 Mich. 183, 6 N. W. 225; State v. Smith, 68 N. J. L. 609, 54 Atl. 411; Arrowwood v. South Carolina etc. R. Co., 126 N. C. 629, 36 S. E. 151.

Complaint is made of certain questions allowed by the court as leading, but a perusal of the record references given makes it quite plain that the questions were hardly to be considered as such. Such matters rest in the sound discretion of the trial court, and its action is not to be disturbed unless there has been an abuse of discretion. We find none here.

Defendants criticize the action of the trial court in allowing witnesses to testify as experts before requiring proper qualifications to be shown. For example, an hydraulic engineer, who had had many years experience in ditch construction with the United States Reclamation Service in the West, and especially in the adjoining state of Utah, was allowed to testify as to the cost of constructing a small lateral ditch for irrigation purposes relative to the lands involved here. Within the rule, as stated by the Supreme Court of the United States, that:

"How much knowledge a witness must possess before a party is entitled to his opinion as an expert is a matter which, in the nature of things, must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous. Stillwell & B. Mfg. Co. v. Phelps, 130 U. S. 520, (32; 1035); Montana R. Co. v. Warren, 137 U. S. 348, (34; 681); Inland & S. Coasting Co. v. Tolson, 139 U. S. 551, (35; 270)."

The Chateaugay etc. Co. v. Blake, 144 U. S. 476, 36 L. Ed. 510, at 512—it is not at all plain that error was committed by the court. Neither is it pointed out in defendants' argument wherein the failure in the qualifications of the expert existed.

It is contended that the court erred in admitting evidence of the sale of somewhat similar property in the vicinity made a year after the taking of the lands in suit here; that evidence of it could not be received because it was subsequent in point of time and a forced sale. The assignment of error is unfounded. The record shows that the witness testifying concerning the sale expressly stated that it was a voluntary one—the bank having taken over the property in satisfaction of a mortgage and then resold it, through the witness acting as the bank's agent. Regarding the objection that the sale offered in evidence was had subsequent to the taking of defendants' lands, the record clearly shows that land values in the locality where the defendants' lands lay, had not changed for a number of years before and after such taking. In Roberts v. City of Boston, 149 Mass. 346, 21 N. E. 669, it is said:

"The sales of other similar estates in the neighborhood were admissible. Paine v. Boston, 4 Allen 168; Railroad Corp. v. Railroad Corp., 3 Allen 142; Whitman v. Railroad, 7 Allen 313; Chandler v. Aqueduct Corp., 122 Mass. 305; Shattuck v. Railroad, 6 Allen 115; Patch v. Boston, 146 Mass. 52, 14 N. E. Rep. 770. The lands sold were near to the petitioner's, and similar to it, and similarly situated. One sale was about five months, and the other more than twenty months, after the taking of petitioner's land. The mere lapse of time after the taking did not render the evidence of the sales incompetent, and, as the circumstances appear in the evidence, the discretion of the court seems to have been rightly exercised in admitting the evidence."

To the same effect is Bartlett v. City of Medford, 252 Mass. 311, 147 N. E. 739, and see Forrest Preserve District v. Kean, 298 Ill. 37, 131 N. E. 117.

It is said that the court was in error in excluding testimony as to profits derived from the production of hay upon defendants' lands during the year 1921. A review of the record references given in defendants' brief establishes that the court made no such ruling. The witness—not an owner of any of the lands involved here—was asked merely for an

opinion as to the value of these lands, such opinion to be formed solely from an hypothetical question, wherein the hay production of the lands in suit was set out. At other places in the record, it appears that defendants were allowed to show the profits made from the sale of hay taken from their lands.

A paragraph from an amendment to plaintiff's Carey Act contract with the state was offered in evidence and rejected. The error urged as to this ruling of the court was that it was a declaration against interest on the matter of the land values in issue in the case and should have been received. Just how this is so is not argued in defendants' brief. The evidence offered, so far as can be determined from the record, dealt simply with the price of water rights to be sold subsequent settlers upon the Carey Act lands, and fixed a maximum price for these beyond which plaintiff could not go. Such evidence is hardly to be considered relevant to establish the land values of defendants' properties existent at the time plaintiff took its right of way. There was no error here.

It is urged that defendants were prevented from showing the depreciation of their premises, caused by the alleged necessity of fencing their lands along the right of way of the canal to prevent injury to their live stock, but the record before us establishes the fact otherwise. Plaintiff's objection ''to any evidence as to the necessity for fencing or the cost for fencing upon these lands'' was presented to the court, and, upon the statement of counsel for the defendants that the evidence was offered as an element showing the depreciation in the value of the remaining property belonging to defendants, was overruled. For some reason, even after the court's ruling had thus been made, favorable to defendants' contention, the witness then on the stand was not pressed for an answer, nor was any such evidence attempted to be elicited at that point in the record.

However, at other times in the course of the trial, defendants' witnesses Wood and Whiting were permitted,

over plaintiff's objection, to testify very fully as to the risk of injury to live stock caused by large irrigation canals. Again, the defendant Morrison was allowed to tell the jury the cost per mile of fencing in that vicinity, and defendants' witness Robinson testified explicitly to the cost per rod of building a four wire fence, with posts sixteen feet apart, on these lands.

In connection with this matter, complaint is made of an instruction given by the court which told the jury, in substance, that whether the plaintiff should fence the right of way taken through defendants' lands, was not an element of damage, and that if plaintiff failed to fence or take necessary precautions to protect its right of way so as to prevent injury to livestock or other property, it did so at its own risk and would be liable in other actions at law for damage caused by its failure to do so. It is insisted that this instruction prevented defendants from recovering for any proven depreciation of their premises because of the menace to their live stock from an unfenced canal. But the jury were also told, at the request of the defendants, that they might "take into consideration all elements of damages, whether present or prospective, which may be known or which may be reasonably expected to result to their remaining lands from the taking of said right of way, and the injuries affecting such remaining lands by the construction and operation of said canal, in a legal and proper manner." In view of the state of the record in the case, the criticized instruction merely advised the jury that they were not to guess at possible future damages caused by live stock or other property falling into the canal through plaintiff's negligence in fencing, but could take into consideration the depreciation of the lands of the defendants caused by such failure to fence. Quite full testimony concerning this last mentioned subject had, as we have seen, been received by the court. Defendants seem not to have cared to ask an instruction on the point, which doubtless would have been given if they had done so. We think no harm was in-

flicted upon defendants by the court's giving the instruction attacked.

It is argued that error was committed by the trial court in excluding evidence of damages to the ranching business conducted by the defendants upon the lands involved; that proof of such damages was permissible, under Section 4945, Compiled Statutes of Wyoming 1920, which reads in part:

"The jury shall determine the compensation proper to be made to the owners and persons interested for the taking or affecting of such real property or damage to business conducted thereon."

And it is said that the word "or" before the words "damage to business conducted thereon," should be read "and." Examining the record, we find that the offers of proof denied were practically all merely to establish the value of farming implements, horses and cattle owned by the defendants and the investment made by them in their business generally. Such evidence did not prove or tend to prove any damage to the defendants' business. Some offers of evidence were merely offers to prove conclusions—the basic facts being not stated to the court. Other offers embraced evidence, parts of which were clearly inadmissible. Under the authorities, such offers were properly rejected. In Stickney v. Hughes, 12 Wyo. 397, 75 Pac. 945, this court said:

"Where an offer of proof is made as a whole and some of the facts included in the tender are admissible, and others are inadmissible, the court is not bound to separate it, and admit such parts as are competent, although in its discretion it may do so. The refusal to do so, however, will not be error. (1 Thomp. on Trials, Sec. 676; Mundis v. Emig, 171 Pa. St. 417; Smith v. Bank, 104 Pa. St. 518; Herndon v. Black, 97 Ga. 327; Mueller v. Jackson, 39 Minn. 431; Cincinnati, &c., R. Co. v. Roesch, 126 Ind. 445; Abbott's Tr. Brief, (Civ. Jur. Tr.), 231.)"

In Harmon v. Indian etc. District, 217 Ill. App. 502, it is said:

"It is not error to sustain an objection to an offer to prove a mere conclusion. The offer should have been to prove facts tending to show that defendant in error had accepted the plans. Martin v. Hertz, 224 Ill. 84. When an offer of proof embraces evidence, a part of which is inadmissible, the whole offer may be rejected. Cressey v. Kimmel, 78 Ill. App. 27."

To the same effect is the case of Martin v. Hertz, 224 Ill. 84. See also Manning v. Den, 90 Cal. 610, 24 Pac. 1092.

It is presumed, of course, that in enacting Section 4945, W. C. S. 1920, the legislature did so with full knowledge of the existing condition of the law and with reference to it. It was consequently aware that injury to a business conducted upon lands taken under the right of eminent domain had been generally held by the courts not to constitute an element of just compensation unless a statute expressly allowed it. Joslin etc. Co. v. City of Providence, 43 Sup. Ct. Rep. 685, 262 U. S. 668, 67 L. Ed. 1167. Under this rule, one, not the owner of lands who is engaged in a profitable business thereon, might, through the taking of the lands themselves, have his business injured or destroyed and be remediless. The owner of lands was to some degree protected in that respect, as the market value of his land is frequently more or less interwoven with its value for use in his business.

With this state of the law before it, the legislature, by the language above quoted from Section 4945, undoubtedly endeavored to protect both the owner of the land and the tenant or other person engaged in business thereon. This is made clear through not only the use by the law-making power of the disjunctive phrasing of the clause under consideration, but also by the use therein of the words "persons interested" additionally to the word "owner." The contention of the defendants is that the

word "or" should be read as if "and" were used. In Gar Creek Drainage District v. Wagner, 256 Ill. 338, in response to a similar contention, the court said:

"It is true that the word 'and' is sometimes substituted for 'or' in the construction of statutes or contracts or wills to effectuate the intention of the parties, but it is only in cases where the intention is clearly manifested and it is apparent that to construe the word according to its real meaning would involve an absurdity or produce an unreasonable result."

In Prim v. Smith, 2 Queen's Bench Div. 643, it is said:

"We are asked to read 'or' as if it were 'and.' No doubt there are cases where this should be done, but they are cases where the natural meaning would give rise to an interpretation unreasonable, inconsistent, or unjust."

We do not think that the intention of the legislature is clearly manifested requiring the substitution of the word "and" in place of the word "or," nor does the natural meaning of the clause with the word "or" therein result in an interpretation "unreasonable, inconsistent or unjust." Indeed, the reverse is true. It is hardly to be thought that by the statute under consideration, the legislature designed to allow the owner of land an element of damage additional to those generally obtained by him when his land is taken or injuriously affected, and at the same time leave a tenant or other person engaged in a valuable business on land which is appropriated wholly without remedy. We think the legislature tried to and did cure this defect, as they saw it, in the existent state of the law.

The leading cases dealing with recoveries for injuries to business, apart from compensation awarded for the taking and affecting lands through the exercise of the power of eminent domain, arose under statutes which appear to have been enacted in furtherance of the obtaining by great cities,

208

such as New York and Boston, of reservoir and water supply facilities for their great populations. Such laws were passed to meet the hardship produced by the wiping out of entire communities and villages, in order to make way for the extensive reservoirs and aqueducts vitally necessary to furnish the needed water. These statutes have usually dealt with the compensation proper to be awarded for the injury done ''an established business.'' In a case arising under a statute of this character, and which is cited in defendants' brief, In re Board of Water Supply of the City of New York, 211 N. Y. 174, 105 N. E. 213, it was said, substantially, that it was ''essential'' in showing the value of a business, thus appropriated, to ascertain the profits derived therefrom. None of the evidence excluded or offers of proof denied in the case at bar, concerning which in this connection complaint is made, were of this ''essential'' character.

The court, in the course of its instructions to the jury, told the latter that ''the proper compensation to be paid for the land taken, as described in the petition in this case, is its fair market value at the time of the filing of the petition herein.'' It is urged that this instruction was objectionable because the date of filing the petition is fixed as the time when the value of the lands taken was to be determined, the parties having stipulated otherwise, and also because it required the compensation for the lands taken to be fixed at its fair market value, when the record established that there was no market value for the lands. It appears that in the course of the trial, the parties stipulated that the taking by the plaintiff of the Todd land should be fixed as occurring during the period April 15th to July 15th, 1922, and July 16th, 1921, should be considered as the date of taking the Morrison land. Inasmuch as the jury were, in a subsequent instruction, told to fix the value as of the dates stipulated by the parties, and inasmuch as the land values over a period of years in the vicinity of these lands had not been, according to the record testimony,

at all subject to fluctuations, it is difficult to see how the defendants were in any way prejudiced. Especially is this so in view of the fact that the petitions in the several cases were filed, the one as to the Todd land on April 13, 1922, and the one as to the Morrison land July 19, 1921.

We cannot agree that the record does not disclose evidence of market value. There was testimony in the record concerning sales of similar property in the vicinity, which was some evidence of market value. Besides, the jury were told in the court's instructions, at another point, that if they should find from the evidence that the land had no market value, they might give consideration to every fact in the evidence bearing upon its real or actual value. The jury were also told in the same connection, that in the event they found from the evidence that there was, at the time of taking, no market for the lands taken or affected, then the term "market value," as used in other instructions, should be construed by the jury to mean "the fair, actual or real value." We are convinced that the defendants had their view of the law fairly laid before the jury, so far as this matter is concerned.

It is suggested that the court committed error in instructing the jury that the burden of proof was on the defendants "to show the difference in value of the land not taken, if there is any difference, before and after the construction of the canal." It is claimed that this instruction erroneously designated the time as of which damages were to be determined. There is nothing to this contention. The canal was constructed between the dates which the parties had, by stipulation, agreed upon as the time of taking these lands. Land values in that community, as has already been said, had remained stationary for a number of years. It was not undertaken in this instruction to do more than advise the jury where the burden of proof rested, when the alleged depreciation in the value of the land not taken by reason of the construction of the canal was sought to be established.

Error on the part of the trial court is assigned and argued because the jury were told, in substance, that such damage as may subsequently accrue on account of the negligence of the plaintiff, such as the breakage of canal walls, washouts, flooding of defendants' lands or injury of defendants' property, by reason of water escaping from the canal after the appropriation of the right of way, were elements of damage upon which the defendants might recover in other suits, if the circumstances thereof warranted. It is claimed this instruction took away from the jury the consideration of any evidence of seepage. We think this view of the instruction is a strained and unwarranted one, especially when we find that in another instruction given to the jury by the court at the request of the defendants, they were specifically told to consider ''whether, in the operation of said canal by the plaintiff in an ordinarily careful and prudent manner, water would escape therefrom where it crosses the lands of defendants and will water-soak and injuriously affect the remaining lands of the defendants situated below the canal; and from all the evidence in the case determine what the depreciation, if any, in the fair value, of such remaining lands was at the time of the taking.''

Finally, it is insisted that the awards to the defendants were not supported by the evidence. A thorough examination of the record convinces us that there is abundant evidence to justify the jury in reaching the conclusions it did. The testimony in regard to the injury or depreciation to the remaining lands of the defendants after the right of way for the canal had been appropriated, was in conflict. The jury saw and heard the witnesses who testified on the subject. The jury also had the benefit of a view of the right of way appropriated with the canal constructed thereon, as well as the situation of the lands of the defendants with relation thereto. Under familiar principles governing the action of appellate courts, we should hesitate to interfere with the awards made by the jury under such circumstances.

Nothing we have said herein should be construed as indicating our approval of every element of damage which the court permitted the defendants to lay before the jury, or as indicating what our views would be thereon if the plaintiff were here complaining. After an extended study of the record in this case in the light of each and every error alleged and argued by the defendants, we have come to the conclusion that no error prejudicial to the rights of the defendants was committed by the trial court, and consequently the orders confirming the verdict of the jury should be and are hereby affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.