Mark R. ROUTH, May A. Routh, Howard W. Routh and Pearl E. Routh, Appellants (Defendants below),

v.

STATE HIGHWAY COMMISSION of Wyoming, Appellee (Plaintiff below).

No. 3400.

Supreme Court of Wyoming.

June 3, 1965.

Kenneth G. Hamm, of Galicich & Hamm, Rock Springs, for appellants.

John F. Raper, Atty. Gen., Glenn A. Williams, Asst. Atty. Gen., Dean W. Clark, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

The State Highway Commission, in the establishment of a new route as a part of the Interstate Highway System, filed its petition for condemnation and application to take possession of 69.5 acres of a 327.5-acre tract of Routh land on the east edge of Green River, some of the mentioned land being within, and the major part being outside, the town limits. Commissioners were duly appointed by the trial court in the usual manner, and on July 14, 1961, they made a certificate of award, valuing the land actually taken at $250 per acre, with no damage to the remaining property, a total value of $17,375. On August 10, 1961, the State Highway Commission filed a demand for jury trial. Upon the trial, a verdict was entered allowing as the true value of the land actually taken $2,015.50, and the damages to the remaining portion, $2,249.50, total $4,465—an obviously improper computation, which the court in its order confirming verdict changed to $4,265. The resulting appeal by the Rouths to this court presents two aspects:

First: A motion lately filed asking that this court remand the action to the district court with instructions to the court that the report and award of the commissioners be confirmed, it being the appellants' position that the district court had no jurisdiction of the subject matter under the holding of this court in State ex rel. Frederick v. District Court of Fifth Judicial District in and for County of Big Horn, Wyo., 399 P.2d 583 (issued March 8, 1965), because the demand for jury trial was filed on August 10, 1961, and more than ten days had elapsed between the filing of the certificate of award and the demand for jury trial, to-wit, twenty-seven days; and that the demand for jury trial was not served upon appellants within ten days after the filing of the certificate of award.

Second: A number of alleged errors in the trial of the cause.

### The Motion

We will first discuss appellants' suggestion that in view of the lateness in both the filing and serving of the demand for jury trial, the court had no jurisdiction of the subject matter of the action or right or authority to entertain the cause other than to confirm the report and award of the commissioners.

In State ex rel. Frederick v. District Court of Fifth Judicial District in and for County of Big Horn, supra, a proceeding for writ of prohibition to prevent a jury trial in a condemnation matter, this court held that under the circumstances of that case the failure of the State Highway Commission to comply with Rules 5(a) and 38(b), W.R. C.P., was fatal.

In the instant litigation although there was a failure to meet the time requirements of the rules, appellants appeared for trial, verdict was entered, and an appeal taken from the court's judgment on grounds other than jurisdictional, that point not being raised until after the submission of briefs to this court. Our statement in Padlock Ranch, Inc., v. Washakie Needles Irrigation Dist., 50 Wyo. 253, 60 P.2d 819, 61 P.2d 410, 411, 412, is pertinent and determinative of the contention as to lack of jurisdiction:

"* * * A number of things are necessary to confer * * * [jurisdic-

tion] in complete form. One is that the tribunal must have general power over matters of the kind involved in a particular case. That exists in the case at bar. The particular proceeding must, further, be initiated in some sufficient manner. That was done by the petition filed in this case, thus giving the court jurisdiction over the subject matter in the particular case. To give the tribunal the power to hear and determine the cause * * * something more, of course, is essential; namely, notice to the parties interested. That notice confers jurisdiction over the parties, and, if it is insufficient but they make a general appearance, the insufficiency is waived * * *. But merely because such notice or appearance is necessary to hear and determine the cause, by no means indicates that the court did not have jurisdiction of the subject matter in the particular cause. * * * *"

Under this holding although the requirements of Rule 38(b) were not met by "serving upon the other parties a demand * * [for jury trial] in writing * * * not later than 10 days after service of the last pleading directed to such issue [in this instance, the certificate of award]," it is apparent that appellants by their appearance waived that insufficiency. While the commissioners' certificate mentioned in §§ 1–769 and 1–770, W.S.1957, is not a pleading in the ordinary sense, the development of the issues raised by a last pleading is brought about by this certificate in eminent domain proceedings; and a common sense, reasonable interpretation of the rules' application to eminent domain is that the time should run from the filing of the certificate. There is, of course, no question but that the trial court had general power over a condemnation proceeding, it being argued only that failure of compliance with the rules rendered the trial court, under the provisions of § 1–770 powerless to enter this particular judgment. In view of appellants' appearance before the trial court, we cannot perceive any basis for such argument, and the motion is denied.

*Alleged Errors in the Trial*

Appellants charge the occurrence of six errors in the trial of the cause:

1. The permitting of the State Highway Commission to examine witnesses regarding the value of lands not in the vicinity and not comparable to those taken;

2. Unduly restricting the cross-examination of the State Highway Commission's witnesses concerning land in the immediate vicinity of the "comparables" about which they testified;

3. Unduly restricting the cross-examination of one of the witnesses, Dickson, concerning some of his own lands;

4. Changing the figure "$4,465" in the verdict to "$4,265";

5. Permitting improper conduct of counsel in the final argument; and

6. Entering a judgment contrary to and not sustained by the law and the evidence; the award of the jury, for the land actually taken, and for the damages to the remaining portion of the Routh land, was inadequate, such inadequacy being due to the influence of passion and prejudice.

The first and perhaps the basic ground of this appeal stems from the wholly diverse views of the parties as to what lands were comparables, and such views were understandable since the Routh land had most unusual physical characteristics. According to the version of every witness who testified, it was very rough and could not be utilized for subdivision building without very substantial altering of the surface. All of the Rouths' witnesses conceded that the lands which they used as a basis for valuation were not truly comparable, as not being as rough as that under consideration. Notwithstanding such fact, they were permitted to use the prices of various subdivisions in Green River and Rock Springs, some fifteen miles distant, in formulating their values.

The State Highway Commission insisted that with the exception of some nine acres on the lower part of the tract which might be suitable for commercial building the highest and best use of the land was grazing

and even questioned whether, because of sparseness of the herbage, it was of much value for that. Its counsel insisted upon the right to present the theory that the only comparables were grazing land and introduced evidence concerning values of property far distant from towns or concentrations of population. To this Rouths' counsel voiced objections and because he was overruled by the court now argues that the rulings were error. The contention presents questions of some difficulty. Both litigants concede the rule in this jurisdiction that the sales of similar property in the vicinity are admissible to prove value of that being taken by eminent domain. Morrison v. Cottonwood Development Co., 38 Wyo. 190, 266 P. 117; State Highway Commission v. Triangle Development Co., Wyo., 369 P. 2d 864. And both recognize this court's view in State Highway Commission v. McNiff, Wyo., 395 P.2d 29, 31, that "No general rule can be laid down governing the degree of similarity which must exist between properties sold and that condemned to make evidence of sales admissible, and the propriety of receiving such evidence must be determined by the trial judge within the proper limits of his discretion." Thus, there was no real disagreement as to the applicable law. Whether or not the court erred in allowing evidence concerning Green River and Rock Springs additions over the commission's objection that they were not comparable is not here in issue. Apparently the court considered that both parties should be accorded some latitude in this regard with the opportunity to introduce evidence which would bring out to the jury any dissimilarities in the property about which the testimony was given. While the court might have been justified in rejecting the evidence of both parties as to their respective comparables,[1] we think that in the exercise of its discretion it was warranted in allowing both litigants to present their theories and in so doing to adduce evidence of what they contended to be the only lands with which comparison could be made, even if the comparison of neither party was truly apt. We find no error on this phase.

■ Appellants combine their argument on points two and three, relating to the charge that the court erred in improperly restricting their rights of cross-examination as to lands and the valuation thereof in the immediate vicinity or adjacent to lands presented as comparables and in refusing to allow cross-examination of the witness Dickson to compel him to answer questions concerning lands owned by him. Although numerous authorities are cited by them as tending to hold that the opportunity for cross-examination concerning market value should not be unduly curtailed, it is unnecessary to cite all of these since in Morrison v. Cottonwood Development Co., supra, we clarified this court's position by saying, 266 P. at 120:

"Complaint is made that the court erred in permitting cross-examination of some of defendants' witnesses concerning sales of property, concerning which nothing had been said in their direct examination. But it appears that the witnesses so interrogated had testified in the course of their examination in chief that there were no sales of other lands in the vicinity of the lands involved in the proceedings, and no market value therefor. We think it was proper that such witnesses should be asked on cross-examination about other sales which had occurred in the neighborhood in order that their knowledge on the subject might be tested. * * *"

Counsel overlooks the fact that appellants here established no sufficient background for cross-examination by presenting evidence

1. As noted in Commonwealth, Department of Highways, v. Citizens Ice & Fuel Company, Ky., 365 S.W.2d 113, 115, "It sometimes occurs that there simply are not any comparable sales to be found," the court holding that when a witness is qualified as an expert on real estate valuation and values, it did not think it must always be an absolute sine qua non to either admissibility, or sufficiency of his opinion that it be supported by comparable sales.

that the property inquired about was similar or comparable to the condemned property. The same principle applies to the court's sustaining of an objection to cross-examination of the witness Dickson concerning the price paid for certain property owned by him when there had been no evidence of its being comparable to the Rouths' property. In both instances insufficient foundation had been laid for the interrogation, and thus the rulings of the court were not erroneous.

We have reviewed carefully appellants' argument that the court erred in changing the "total" in the verdict so that it would reflect the sum of the two items of damages previously stated by the jury. The cases cited by the parties deal with unlike situations and are not persuasive, but more importantly, the basic premise of appellants on this claimed error is misconceived. They submit that "it is impossible to determine here just what the jury did, or intended to do. It could have arrived at the $4,465.00 total first, and then attempted to break it down into two components." This would have been contrary not only to the spirit of the law but also to the explicit instructions, which indicated that the amount for the taking of the property and that for the damage to the remainder should be considered separately. We cannot indulge the presumption that juries do not follow the instructions of the court. Hall v. Chicago & North Western Railway Company, 5 Ill.2d 135, 125 N.E. 2d 77, 50 A.L.R.2d 661. It has long been held that an error in a verdict appearing as a matter of calculation will be corrected. Hanse and Hepp v. New Orleans Marine and Fire Insurance Co., 10 La. 1, 29 Am. Dec. 456, 460.

Appellants urge that appellee's counsel made improper argument to the jury in saying:

"It is with this thought I would like to leave you and say at this time that at the time you were sworn as jurors, and at the time you were interrogated on voir dire I asked you if you would be just as concerned with the State's money as you would be your own, that merely because the State is involved that it would not be required to pay more money for that land than would a person who wanted to buy it. I still hold you to that charge and to your affirmance that you would consider that and that you would do as these instructions say."

We fail to see that such statement was violative of the principles announced in the cases cited as authority for appellants' position, most of which are alluded to in Annotation, 33 A.L.R.2d 442, entitled, "Counsel's appeal in civil case to self-interest of jurors as taxpayers, as ground for mistrial, new trial, or reversal"; it did not refer to the self-interest of the jurors but on the contrary was an appeal to them that they treat the State on the same basis as they would any other litigant, which is, of course, a most commendable philosophy. Additionally, no objection was interposed to the argument now suggested to have been erroneous, and it is well settled that this is essential to any later complaint of impropriety. Edwards v. Harris, Wyo., 397 P.2d 87, 95.

In arguing their sixth and final point, appellants state that "A review of the record leaves no doubt that Routh was unduly restricted at every stage of the proceedings by narrow and erroneous rulings of the trial court. * * * Although we do not wish to appear plaintive about it, the attitude of the trial court seemed to be one of antagonism * * *." We have read and reread with care the colloquy between court and counsel and the rulings of the court in the various portions to which exception is here taken. Admittedly, the cold record does not ever adequately reflect tones of voice, facial expressions, or any complete attitude of personnel, so that it is often possible that counsel may be annoying and contentious or the court arbitrary and unfair without this being fully disclosed to the reader. In this case, none of these things are apparent from the record either as to court or counsel, but even if there had been some tendency toward this, it

might have been excusable in view of the extreme novelty of the matter presented and the necessity to be more or less repetitious in order to adequately cover the points deemed by the litigants to be important.

We have dealt with the respective charges of error, which taken together are now said to be prejudicial error, but we have found no such impropriety as to warrant the application of the statement upon which appellants rely from In re Santrucek, 239 N.Y. 59, 145 N.E. 739, 741:

"Any one of these errors might perhaps be disregarded if it stood alone. Possibly all might be disregarded in a case where the verdict was well supported by the facts. We cannot hold them negligible upon the record now before us."

We do not find that there were cumulative errors.

From what we have said, it is evident that the verdict and judgment were not contrary to law. However, the insistence that they are contrary to evidence is a matter which is entitled to most serious consideration. As noted in our discussion of appellants' first ground of appeal, the parties embraced wholly diverse views of what lands were comparable to that taken or damaged. Aside from the small percentage which might have had commercial possibility, the real question presented to the jury was whether the highest and best use of the land was for grazing purposes or for residences. One of the appellants, Howard Routh, when asked for an opinion as to how much it would cost or how much earth it would take to make the area suitable for housing, said it depended on how the builder wished to build—that if you wanted to make it flat it would take a lot, but if you built houses on the terrain and followed the gradual slope, it would not take too much earth moving. He also said it would "take considerable figuring" to know how much it would cost for earth work and leveling of the property. Another of appellants' witnesses testified that generally buyers who would go into an area where they would be on a hill or require expensive cutting and filling would be more or less what one called a custom-home builder but that the market for such homes in Green River would not be great and that the land under discussion should best be developed as a large tract and many houses on it.

Although neither party's witnesses dealt with actual figures as to cost of filling, etc., appellee's witnesses were very definite in their opinion that the highest and best use of the Routh property was for grazing purposes. One of them testified:

"Beginning at about this point [southwest corner where highway will take off], immediately the rise starts, I would say most generally about a 30 degree pull or angle, and about every 30 feet you reach a different plateau. These plateaus on this land are anywhere from 25 to 50 feet and extend to the west. And then they start again— in other words there is a series of steps until you finally get to the top and there is rough hills, mountains. Nowhere on the top could I find a place I don't believe as large as 3 acres that was flat. That wouldn't be feasible for a housing addition if you would have to develop the whole area for the 3 acres. * * *"

As to other portions of the Rouths' property, this witness said:

"* * * it slopes in two directions, south and west, and to the northwest generally so that you have * * * two slopes in there. There are many gullies and these gullies are still 15 to 20 feet deep. They are numerous * *. If you are going to build an area for residences it would have to be more or less sloping or built on contours of the land. It is impossible to build to the contours here because of the ravines the water has caused by running off of this sloping area. Sure, you could fill them in if you took the dirt and filled the area but you wouldn't be able

to build on them because you can't build on fill * * * [unless you] get surveys over certificates that it has been compacted to a certain hardness. But then compaction is an expensive proposition. It requires watering, tamping, * * * and constant pressure to maintain it. It would take about a third more dirt I would imagine to fill the same hole by * * * compacting * * *. For that reason I believe this tract is entirely too expensive to touch."

" * * * This is also in plateaus. However, not as much. There are probably two or three over there. The north edge of the plateau is a high steep cliff. Then it drops down towards the west edge boundary of the property quite fast. Everything drains from * * * the west side * * *. There are ditches running * * * along horizontal to the boundary line. * * * At the top of these ravines the peaks are very narrow and sloping, probably being 150 feet. 150 feet would cover the top of each one of these. Then of course they get smaller at the point. These ravines are deep, 25 to 30 feet. Now, Green River has a gypsum problem down here. This appears to be a solid gypsum hill. * * * the LDS Church in Green River was built on top of a gypsum deposit. They had to abandon the church because the foundation has cracked up and it is no longer safe for meetings."

One of appellee's witnesses testified that he considered the value of the 60.5 acres of land taken, $1,525 ($25 an acre), and for the 9 acres with commercial possibilities, $500 per acre. Appellee's other witness testified that he believed the entire 69.5 acres had as its highest and best use grazing and valued each acre at $7.50.

Appellants' witnesses valued the 9 acres, which they considered as having commercial possibilities, from $500 to $1,000 an acre, and the balance, which they considered as having as its highest and best use

residential building, from $300 to $450 an acre.

Total damages to the remaining acreage was estimated by appellants' witnesses from $11,250 to $45,000, and by appellee's witnesses from $1,005 to $1,675.

As indicated in Heal v. Stoll, 176 Wis. 137, 185 N.W. 242, 246:

" * * * The jury were not bound to accept the opinions of a majority of the witnesses. There was much conflict in the evidence as to values, and there were many physical conditions described to the jury. It was the duty of the jury to consider and weigh the opinions of all the witnesses as expressed in this testimony, and the ultimate weight of that testimony was a question to be determined by the jury. In making their determination they were not bound to ignore entirely their own knowledge and experience with respect to the elements which combine to constitute the value of the land. * * * "

It is apparent in the instant case that there was presented to the jury no conclusive yardstick of land valuation and there is no basis upon which this court could now properly say that the amount of the verdict is inadequate; as to the charge that the verdict was due to influence or passion and prejudice, there is an entire lack of a showing on that point.

Affirmed.

Mr. Justice McINTYRE (concurring).

I concur in the result, but I think we unnecessarily cause confusion in what is said about Rule 38(b), W.R.C.P.

This rule does not expressly cover a situation where, in a special proceeding, an issue is not joined by pleadings directed to such issue. Section 1–771, W.S.1957, does expressly cover and apply.

When we read something into a rule of procedure, by implication, and then say the implied language supersedes an applicable statutory provision, we create a situation where an interested party could be trapped to his prejudice.

Since we have rule-making powers adequate to correct any conflict in procedural matters, I think we should amend Rule 38(b) by amendment rather than by judicial interpretation.

In the case at bar, it would be sufficient merely to hold, regardless of whether Rule 38(b) does or does not supersede § 1–771, that the owners waived any objections they might have to a trial by jury for determination of the amount of compensation. We ought not indulge in dictum to make law which could best be made by correcting rules of procedure.